IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-30279

_____

IN RE:   ABBOTT LABORATORIES, BRISTOL-MEYERS
         SQUIBB COMPANY, INC. and MEAD JOHNSON
         & COMPANY,

                                        Petitioners.


_____

No. 94-30280

_____

ROBIN FREE and RENEE FREE,

                                    Plaintiffs-Appellees,

versus

ABBOTT LABORATORIES, BRISTOL-MEYERS SQUIBB
COMPANY, INC. and MEAD JOHNSON & COMPANY,

                                    Defendants-Appellants.



_____

Appeal from the United States District Court
for the Middle District of Louisiana
_____

(April 24, 1995)

Before HIGGINBOTHAM, SMITH, and PARKER, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

     This class action brought under the antitrust laws of the
State of Louisiana requires that we decide whether the Judicial
Improvements Act of 1990 overrules Zahn v. International Paper Co.,
414 U.S. 291 (1973).  We hold today that it does.  We agree with
the district court that the claims of the class representatives met

the requisite amount in controversy and that it has diversity jurisdiction over their claims, but disagree with its decision to abstain from exercising it. We agree with the district court that it had supplemental jurisdiction over all other members of the class, but disagree with its decision not to exercise it. We vacate the order remanding to state court.

## I.

Robin and Renee Free filed suit in a Louisiana state court on October 14, 1993, alleging that Abbott Laboratories, Bristol-Meyers Squibb Company, Inc., and Mead Johnson & Company had conspired to fix infant formula prices. The Frees filed for themselves and for a class[1] of Louisiana consumers. Defendants removed to federal court, and plaintiffs moved to remand.

The federal district court granted the motion to remand. The court held that it lacked federal question jurisdiction and that it had diversity jurisdiction only over the named plaintiffs' claims and not over claims of the other members of the class. The district court declined to exercise supplemental jurisdiction because the claims raised "novel issues of state law."

The district court remanded the named plaintiffs' claims on "the basis of . . . the Colorado River/Moses H. Cone doctrine of abstention."[2] It did so to avoid piecemeal litigation and to permit

_____

[1] The district court has not certified a class. Our examination of jurisdiction reflects the allegation of the plaintiffs and their invocation of jurisdiction -- a putative class.

[2] Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976); Moses H. Cone Memorial Hosp. v. Mercury

2

Louisiana to rule on the "novel and complex issues of state law." Defendants both appeal and petition for mandamus, asking that we vacate the order remanding to state court.

## II.

28 U.S.C. § 1447(d) shields from review orders remanding for lack of subject matter jurisdiction, see In re Shell Oil Co., 932 F.2d 1518, 1520 (5th Cir. 1991), cert. denied, 502 U.S. 1049 (1992), or a defect in removal procedure noted by timely motion, see In re Medscope Marine Ltd., 972 F.2d 107, 110 (5th Cir. 1992). See Thermtron Prods. Inc. v. Hermansdorfer, 423 U.S. 336 (1976).

Fairly read, the remand order did not rest upon a lack of subject matter jurisdiction or defective removal procedure. The court noted no flaw in the removal procedure, and its decision to abstain follows an explicit finding of subject matter jurisdiction. Our appellate jurisdiction follows. See In re International Paper Co., 961 F.2d 558, 561 (5th Cir.) (authorizing review by appeal, not mandamus, where remand is based upon "circumstances that give the court discretion to dismiss the case"), cert. denied, 113 S. Ct. 326 (1992); McDermott Int'l v. Lloyds Underwriters of London, 944 F.2d 1199, 1203-04 (5th Cir. 1991) (regarding remand based upon Colorado River as discretionary and thus reviewable by appeal, not mandamus).

---

Constr. Corp., 460 U.S. 1 (1983).

III.  DIVERSITY AND SUPPLEMENTAL JURISDICTION

A. DIVERSITY JURISDICTION:  THE NAMED PLAINTIFFS' CLAIMS

The court found it had diversity jurisdiction over the named plaintiffs' claims even though each named and unnamed plaintiff claimed only $20,000, less than the $50,000 minimum for diversity jurisdiction.  28 U.S.C. § 1332(a).  The district court found that Louisiana law attributed all of a class's attorney's fees to the named plaintiffs.  It held that the claim of the named plaintiffs for $20,000 -- once swelled by attorney's fees -- met the $50,000 amount-in-controversy requirement.

Plaintiffs argue that Louisiana statutes distribute the fees pro rata to all members of the class, with the result that none meets the amount-in-controversy requirement.

The distribution of attorney's fees centers on two Louisiana statutes.  The first, Article 595 of the Louisiana Code of Civil Procedure, provides:

> The court may allow the representative parties their reasonable expenses of litigation, including attorney's fees, when as a result of the class action a fund is made available, or a recovery or compromise is had which is beneficial, to the class.
>
> . . .
>
> Official Revision Comments
>
> (a)  It is intended, in the first paragraph, that the reasonable expenses of litigation allowed the successful representative parties is to be paid out of the fund or benefits made available by their efforts.

The second key Louisiana statute is Section 51:137 of the Louisiana Revised Statutes, which provides:

4

Any person who is injured in his business or property by any person by reason of any act or thing forbidden by this Part may sue in any court of competent jurisdiction and shall recover threefold the damages sustained by him, the cost of suit, and a reasonable attorney's fee.

Article 595, plaintiffs contend, supports their argument that the fees are to be distributed among all class members. See, e.g., White v. Board of Trustees, 276 So. 2d 714, 719 (La. Ct. App. 1973) (deducting pro rata shares of an Article 595 attorney's fee from the awards due to each plaintiff), writ ref'd, 279 So.2d 694 (La. 1973).

We disagree. Defendants pay attorney's fees and damages. The plain text of the first sentence of 595 awards the fees to the "representative parties." (The language allowing the "representative parties" their fees is echoed in Comment (a).)

Finally, plaintiffs argue that construing Article 595 to attribute the fees to the named plaintiffs -- rather than to distribute them among all the plaintiffs -- renders the statute unconstitutional. The argument continues that the federal courts have generally held that Zahn forbids attributing the fees of class members to class representatives. The only circuit court to speak to this question held that attributing a class's attorney's fees only to the named plaintiffs instead of pro rata to each member of the class "would conflict with the policy of Zahn." Goldberg v. CPC Int'l, Inc., 678 F.2d 1365, 1367 (9th Cir.), cert. denied, 459 U.S. 945 (1982). Many district courts have followed Goldberg.[3]

---

[3] See, e.g., Copeland v. MBNA Am., N. A., 820 F. Supp. 537, 541-42 (D. Colo. 1993); Mayo v. Key Fin. Servs. Inc., 812 F. Supp.

But Goldberg's reading of Zahn sheds little light on the distinct policy choices behind Louisiana's decision regarding rights of recovery by class members. That a state chooses a set of rules that result in an award in excess of $50,000 frustrates no policy of Zahn. Simply put, under the law of Louisiana the class representatives were entitled to fees. Their rights of recovery were not created by a judge's summing the discrete rights of class members. The district court applied the law of Louisiana. Because it did so, we are persuaded that the individual claims of the class representatives met the requisite jurisdictional amount. We turn now to the question of supplemental jurisdiction over the class members, confronting at its threshold Zahn's current vitality. That is the question of Zahn.

B.  SUPPLEMENTAL JURISDICTION:  THE UNNAMED PLAINTIFFS' CLAIMS

Supplemental jurisdiction over the unnamed plaintiffs' claims has been an open question since Congress passed the Judicial Improvements Act of 1990.[4]

---

277, 278 n.3 (D. Mass. 1993); Czechowski v. Tandy Corp., 731 F. Supp. 406, 410 (N.D. Cal. 1990); National Org. for Women v. Mutual of Omaha Ins. Co., 612 F. Supp. 100, 109 (D.D.C. 1985); see also Neve Bros. v. Potash Corp. (In Re Potash Antitrust Litig.), 866 F. Supp. 406, 414 n.19 (D. Minn. 1994) (following Goldberg despite enactment of Judicial Improvements Act of 1990, 28 U.S.C. § 1367) which at least arguably undermines Zahn).

[4]  28 U.S.C. § 1367 provides in relevant part as follows:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original

Congress enacted § 1367 against the background of <u>Zahn</u>, in which the Supreme Court had held that the claim of each member of a class action must meet the amount-in-controversy requirement. <u>Zahn</u>, 414 U.S. at 301. <u>Zahn</u> forbade the exercise of supplemental jurisdiction over the claims of class members who did not do so.

Defendants argue that Congress changed the jurisdictional landscape in 1990 by enacting § 1367. Section 1367(a) grants

jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if --

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

district courts supplemental jurisdiction over related claims generally, and § 1367(b) carves exceptions. Significantly, class actions are not among the exceptions.

Some commentators have interpreted this silence to mean that Congress overruled <u>Zahn</u> and granted supplemental jurisdiction over the claims of class members who individually do not demand the necessary amount in controversy.[5] Some of § 1367's drafters disagree.[6] No appellate court has ruled on the question yet.[7] The

---

[5] <u>See</u>, <u>e.g.</u>, 1 James W. Moore et al., <u>Moore's Federal Practice</u>, ¶ 0.97[5], at 928 (2d ed. 1994); 2 Herbert B. Newberg & Alba Conte, <u>Newberg on Class Actions</u>, § 6.11, at 6-48 (3d ed. 1992); Joan Steinman, <u>Section 1367 -- Another Party Heard From</u>, 41 Emory L.J. 85, 103 (1992); Thomas C. Arthur & Richard D. Freer, <u>Grasping at Burnt Straws:  The Disaster of the Supplemental Jurisdiction Statute</u>, 40 Emory L.J. 963, 981 (1991).

[6] <u>See</u> Thomas D. Rowe, Jr., Stephen B. Burbank, & Thomas M. Mengler, <u>Compounding or Creating Confusion About Supplemental Jurisdiction?  A Reply to Professor Freer</u>, 40 Emory L.J. 943, 960 n.90 (1991). Professors Rowe, Burbank, and Mengler all had a hand in crafting the supplemental jurisdiction statute. <u>See</u> Rowe, et al. <u>supra</u>, 40 Emory L.J. at 949 n.27; H.R. Rep. No. 734, 101st Cong., 2d Sess. 27, <u>reprinted</u> <u>in</u> 1990 U.S.C.C.A.N. 6860, 6873 n.13.

[7] This circuit has twice broached the question, but never answered it. In <u>More v. Intelcom Support Servs., Inc.</u>, we noted that § 1367 might affect the <u>Zahn</u> rule, but declined to decide that because the action at issue had been filed before § 1367 took effect. <u>See</u> 960 F.2d 466, 473 (5th Cir. 1992). Later, in <u>Watson v. Shell Oil Co.</u>, we reasoned that the <u>Zahn</u> rule would demand dismissal of class members' claims below the jurisdictional threshold. <u>See</u> 979 F.2d 1014, 1021 (5th Cir. 1992). However, that case had been filed before § 1367 took effect, and the opinion makes no mention of that statute. <u>See</u> <u>id.</u> at 1021 & n.27. In any event, <u>Watson</u> has been vacated. When this court ordered the case reheard en banc, <u>see</u> 990 F.2d 805 (5th Cir. 1993), the panel opinion in <u>Watson</u> was vacated, <u>see</u> 5th Cir. R. 35 (Internal Operating Procedure), and the en banc rehearing never occurred because the parties settled and the appeal was dismissed.

The Third Circuit is the only other circuit to have considered the question. In <u>Packard v. Provident Nat'l Bank</u>, the court noted

district courts are split even within this circuit, although the majority appear to hold that <u>Zahn</u> survives the enactment of § 1367.[8]

Perhaps, by some measure transcending its language, Congress did not intend the Judicial Improvements Act to overrule <u>Zahn</u>. The House Committee on the Judiciary considered the bill that became § 1367 to be a "noncontroversial" collection of "relatively modest proposals," not the sort of legislative action that would upset any long-established precedent like <u>Zahn</u>. 1990 U.S.C.C.A.N. at 6861. Plaintiffs argue that the Act was prompted not by a congressional

---

the conflict among authorities on our question, but declined to resolve it. <u>See</u> 994 F.2d 1039, 1045-46 n.9 (3d Cir.), <u>cert. denied</u>, 114 S. Ct. 440 (1993).

[8] <u>Compare</u> <u>Henkel v. ITT Bowest Corp.</u>, No. 94-4116, 1994 U.S. Dist. LEXIS 19118, at *19 (D. Kan. Dec. 19, 1994) (holding that § 1367 did not overrule <u>Zahn</u>); <u>Aspe Arquitectos, S.A. de C.V. v. Jamieson</u>, 869 F. Supp. 593, 595 (N.D. Ill. 1994) (same); <u>Dirosa v. Grass</u>, No. 94-2551, 1994 U.S. Dist. LEXIS 15100, at *7 (E.D. La. Oct. 19, 1994) (same); <u>Kaplan v. Mentor Corp.</u>, No. 94-6249, 1994 U.S. Dist. LEXIS 15779, at *3 (N.D. Ill. Oct. 17, 1994) (same), <u>supplemented</u>, 1994 U.S. Dist. LEXIS 15410 (E.D. Ill. Oct. 24, 1994); <u>Benninghoff v. Tolson</u>, No. 94-2903, 1994 U.S. Dist. LEXIS 13428, at *11 (E.D. Pa. Sept. 22, 1994) (same); <u>Clement v. Occidental Chem. Corp.</u>, Nos. 94-1315, 94-1316, 94-1317, 1994 U.S. Dist. LEXIS 12387, at *19 (E.D. La. Aug. 30, 1994) (same); <u>Neve Bros. v. Potash Corp. (In re Potash Antitrust Litig.)</u>, 866 F. Supp. at 414 (same); <u>North Am. Mechanical Servs. Corp. v. Hubert</u>, 859 F. Supp. 1186, 1188-89 (C.D. Ill. 1994) (same); <u>Duet v. Lawes</u>, No. 94-0739, 1994 U.S. Dist. LEXIS 4755, at *4-5 (E.D. La. Apr. 7, 1994) (same); <u>Riverside Transp., Inc. v. Bellsouth Telecommunications, Inc.</u>, 847 F. Supp. 453, 456 (M.D. La. 1994) (same); <u>Fink v. Heath</u>, No. 91-2982, 1991 U.S. Dist. LEXIS 9182, at *7-8 (N.D. Ill. July 8, 1991) (same); and <u>Griffin v. Dana Point Condominium Ass'n</u>, 768 F. Supp. 1299, 1302 (N.D. Ill. 1991) (same) <u>with</u> <u>Lindsay v. Kvortek</u>, 865 F. Supp. 264, 276 (W.D. Pa. 1994) (determining that § 1367 supersedes <u>Zahn</u>; case did not involve class action); <u>Patterson Enters., Inc. v. Bridgestone/Firestone, Inc.</u>, 812 F. Supp. 1152, 1154 (D. Kan. 1993) (same); <u>Garza v. National Am. Ins. Co.</u>, 807 F. Supp. 1256, 1258 & n.6 (M.D. La. 1992) (same).

desire for wholesale revisions of the jurisdictional rules, but by the more limited desire to restore traditional understandings of federal jurisdiction, which were upset by Finley v. United States, 490 U.S. 545 (1989). In Finley, the Supreme Court held that federal courts could not exercise pendent-party jurisdiction without an express legislative grant, a grant never thought necessary before. Id. at 556. In short, Congress intended the Act to "essentially restore the pre-Finley understandings of the authorization for and limits on other forms of supplemental jurisdiction," not, arguably, to alter Zahn. 1990 U.S.C.C.A.N. at 6874. A disclaimer in the legislative history strives to make this point clear by stating: "[T]he section is not intended to affect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity-only class actions, as those requirements were interpreted prior to Finley." 1990 U.S.C.C.A.N. at 6875. The passage cites Zahn as a pre-Finley case untouched by the Act. 1990 U.S.C.C.A.N. at 6875 n.17; see also Rowe et al., supra, 40 Emory L.J. at 960 n.90 (stating that this passage was intended to demonstrate that Zahn was to survive the enactment of § 1367).

We cannot search legislative history for congressional intent unless we find the statute unclear or ambiguous. Here, it is neither. The statute's first section vests federal courts with the power to hear supplemental claims generally, subject to limited exceptions set forth in the statute's second section. Class actions are not among the enumerated exceptions.

10

Omitting the class action from the exception may have been a clerical error.[9]  But the statute is the sole repository of congressional intent where the statute is clear and does not demand an absurd result.  See West Virginia Univ. Hosps., Inc. v. Casey, 111 S. Ct. 1138, 1147 (1991) (refusing to permit the Court's "perception of the 'policy' of the statute to overcome its 'plain language'"); United States v. X-Citement Video, Inc., 115 S. Ct. 464, 467-68 (1994) (rejecting lower court's "plain language reading" of a statute where that reading would create a "positively absurd" result).  Abolishing the strictures of Zahn is not an absurd result.  Justice Brennan's dissent joined by Justices Douglas and Marshall states the counterposition.  Some respected commentators would welcome Zahn's demise.  See, e.g., 1 Moore et al., supra, § 0.97[5], at 928; Arthur & Freer, supra, 40 Emory L.J.

---

[9]  The impressive array of Professors Burbank, Mengler, and Rowe has observed that "[i]t would have been better had the statute dealt explicitly with this problem, and the legislative history was an attempt to correct the oversight."  Rowe et al., supra, 40 Emory L.J. at 960 n.90; that the supplemental jurisdiction statute is "not a perfect effort."  Thomas D. Rowe, Jr., et al., A Coda on Supplemental Jurisdiction, 40 Emory L.J. 993, 993 (1991).

Some disagree and with inexplicably sharp language, given the reality that most mistakes become "clear" once they are identified. See, e.g., 1 Moore et al., supra, § 0.97[5], at 928 (blaming "Congressional sloth in drafting the supplemental jurisdiction statute" for confusion over whether Zahn survives § 1367); Richard D. Freer, Compounding Confusion and Hampering Diversity:  Life After Finley and the Supplemental Jurisdiction Statute, 40 Emory L.J. 445, 471 (1992) (noting that Congress passed § 1367 too quickly to notice some of its problems);  Karen N. Moore, The Supplemental Jurisdiction Statute:  An Important But Controversial Supplement to Federal Jurisdiction, 41 Emory L.J. 31, 56-58 (1992) (chastising Congress and its legislative advisors for enacting an ambiguous statute); Thomas C. Arthur & Richard D. Freer, Close Enough For Government Work:  What Happens When Congress Doesn't Do Its Job, 40 Emory L.J. 1007, 1007 (1991) (calling § 1367(b) a "nightmare of draftsmanship").

at 1008 n.6 ("Abrogating Zahn would hardly be absurd" since doing so would harmonize case law and "enable federal courts to resolve complex interstate disputes in mass tort situations."). But the wisdom of the statute is not our affair beyond determining that overturning Zahn is not absurd. We are persuaded that under § 1367 a district court can exercise supplemental jurisdiction over members of a class, although they did not meet the amount-in-controversy requirement, as did the class representatives.

## IV. ABSTENTION AND DISCRETIONARY EXERCISE OF SUPPLEMENTAL JURISDICTION

Colorado River abstention is to be used only sparingly, see Colorado River, 424 U.S. at 813, and this case is a poor candidate. The district court acknowledged that "several of the [Colorado River] factors are either neutral or weighing in favor of the exercise of [federal] jurisdiction." It rested its decision on two concerns: that remanding only the class members' claims would split the action, and the novel and complex questions of state law.

The first of these two concerns -- the risk of piecemeal litigation -- is a problem only under the district court's view of abstention. The second consideration -- that novel and complex state law issues govern the action -- has more merit. Cf. Moses Cone, 460 U.S. at 23-24 (disfavoring abstention where federal question controls). These state law issues included whether indirect purchasers can state a claim under Louisiana antitrust law, and whether the claims in this case were preempted by federal antitrust law.

12

We agree that these may prove to be difficult questions. Standing alone, however, the novelty or complexity of state law issues is not enough to compel abstention.  See, e.g., Rougon v. Chevron, U.S.A., Inc., 575 F. Supp. 95, 97 (M.D. La. 1983) (denying motion to remand to state court even though "the issues presented, involving previously undecided matters of Louisiana . . . law, are peculiarly suited to disposition by the state courts of Louisiana").  Only "'exceptional' circumstances, the 'clearest of justifications,' . . . can suffice under Colorado River to justify the surrender of [federal] jurisdiction." Moses Cone, 460 U.S. at 25-26 (emphasis omitted).  This is not one of those truly rare and exceptional cases in which Colorado River abstention is proper.

The district court remanded the claims of other class members because they presented "novel issues of state law," including whether indirect purchasers could state a claim under Louisiana antitrust law and whether the antitrust claim was preempted by federal law.

Refusing to exercise supplemental jurisdiction over the unnamed plaintiffs' claims reflects respect for considerations of comity, but it assumes that the claims of the class representatives were to be remanded to state court.  The court must now adjudicate claims of the class representatives -- including the same novel and complex state law issues the district court preferred to leave to Louisiana.  So the interests of comity will not be served by declining to exercise supplemental jurisdiction over the class members whose claims do not meet the jurisdictional amount.

13

In short, the entire case should remain in federal court. The district court had diversity jurisdiction over the named plaintiffs' claims; § 1367 granted it supplemental jurisdiction over the claims of the unnamed plaintiffs; and, considering that it must try the named plaintiffs' claims, it abused its discretion on the facts here in declining supplemental jurisdiction over the unnamed plaintiffs' claims. It is not necessary to decide the problematic contention that the district court also had federal question jurisdiction, and we do not. We VACATE the district court's remand order, and REMAND to the district court for further proceedings. The petition for mandamus is DENIED.