**Robin FREE and Renee Free**

**v.**

**ABBOTT LABORATORIES, Bristol–Myers Squibb Company, Mead Johnson & Company.**

Civil Action No. 93–971–A.

United States District Court, M.D. Louisiana.

Jan. 21, 1997.

Patrick Wayne Pendley, A Professional Law Corporation, Plaquemine, LA, Michael D. Hausfeld, Daniel A. Small, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Eric L. Olson, Daniel E. Gustafson, Kent M. Williams, Renae D. Steiner, Heins Mills & Olson, P.L.C., Minneapolis, MN, Howard J. Sedran, Jonathan Shub, Donald E. Haviland, Levin Fishbein Sedran & Berman, Philadelphia, PA, Don Barrett, Barrett Law Offices, Lexington, MS, Gordon Ball, Law Offices of Gordon Ball, Knoxville, TN, for Robin Free and Renee Free.

William R. D'Armond, James P. Dore, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, LA, Phillip A. Wittmann, John M. Landis, Edwin H. Neill, III, Stone, Pigmann, Walther, Wittmann & Hutchinson, New Orleans, LA, James Andrew Langan, Frank Cicero, Jr., Leslie M. Smith, Kirkland & Ellis, Chicago, IL, for Abbott Laboratories, Inc.

Phillip A. Wittmann, John M. Landis, Edwin H. Neill, III, Stone, Pigmann, Walther, Wittmann & Hutchinson, New Orleans, LA, Douglas D. Broadwater, Max R. Shulman, Cravath, Swaine & Moore, New York City, for Bristol–Meyers Squibb Company, Inc. and Mead Johnson & Company.

## RULING ON MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND ATTORNEY FEES

JOHN V. PARKER, Chief Judge.

This matter is before the court on a motion by plaintiffs for final approval of settlements entered into with defendants, Abbott Laboratories ("Abbott") and Bristol–Myers Squibb Company and Mead Johnson & Company (together "Bristol"). Also pending before the court is a joint application of plaintiffs' counsel for an award of attorneys' fees and reimbursement of expenses. Neither motion is opposed. Removal jurisdiction is allegedly based upon 28 U.S.C. § 1332 and in a prior ruling the court has held that there is diversity of citizenship jurisdiction in this case.

### Motion for Final Approval of Settlement

#### Background

On October 14, 1993, plaintiffs filed this action seeking damages for economic loss including treble damages, attorney fees, and legal interest. The plaintiffs allege that defendants entered a conspiracy to fix prices in violation of Louisiana's antitrust law, La.R.S. 51:122 et seq. Specifically plaintiffs allege, "an understanding and concert of action among defendants, the substantial terms of which were to raise, fix, maintain and stabilize at artificially high levels the wholesale price of infant formula sold in the United States, including the state of Louisiana." The plaintiffs purportedly filed this lawsuit on behalf of themselves and a class of consumers who purchased one or more of the defendants' brands of infant formula in the state of Louisiana at any time during the period of January 1, 1980 through December 31, 1992.

Plaintiffs have now entered settlement agreements with both defendants. The settlements provide that Abbott and Bristol will pay $2,350,000 and $2,000,000 respectively, with accruing interest, to settle the claims asserted against each.[1] The settlements, if approved, would conclude this litigation.

---

1. The settlement amount paid by Abbott has been earning interest since January 25, 1996 and the settlement amount paid by Bristol has been earning interest since June 7, 1996.

No class having been certified when the motion was filed, this court tentatively certified a class for settlement purposes only, and preliminarily approved the two settlements. Notices of the settlements were published in newspapers throughout Louisiana as required by Rule 23(e), Fed.R.Civ.P.[2] The notice required class members to submit any objection they might have to the settlement administrator regarding the amount of the settlements, attorneys' fees, expenses, or plaintiffs' awards on or before December 2, 1996. The court has been informed that the administrator did not receive any objections by mail and that no persons have requested to opt out of the class.

On Monday, December 16, 1996, on a motion by plaintiffs, this court held a fairness hearing concerning final approval of the settlement agreements. Although the notices required prehearing written objections, the court announced that any person in the courtroom would be allowed to comment. No objections or comments were made by any member of the public in the courtroom.

**Law**

■ A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. Fed.R.Civ.P. 23(e). A class action settlement should be approved only when it is "fair, adequate, and reasonable." *In re Corrugated Container Antitrust Litigation,* 643 F.2d 195, 207 (5th Cir.1981). In making this determination, a district court should consider the following factors: the possible range of recovery and the certainty of damages; the factual and legal obstacles to prevailing on the merits; the stage of proceedings and the amount of discovery completed; the objections and opinions of absent class members as well as the opinions of class counsel and class representatives; whether the settlement was the product of

collusion or fraud; and the complexity, expense, and likely duration of the litigation. *Reed v. General Motors Corp.,* 703 F.2d 170, 172 (5th Cir.1983).

**Discussion**

■ To protect the interests of the absentee class, this court has a duty to make an independent assessment of the fairness of the settlement. The court executes this duty by assuring that the settlement secures an adequate advantage for the class in return for the surrender of litigation rights against the defendants. *See* 2 NewBerg & Conte § 11.46, at 11–105, 11–106. As the Third Circuit has recently pointed out, a district court must be especially careful in reviewing settlements which are presented through the use of a settlement class. *In re General Motors Corp. Pick–Up Truck Fuel Tank,* 55 F.3d 768, pp. 786–792 (3rd Cir.1995).

■ To enable the court to reasonably assess the fairness of the settlement, the proponents[3] are obligated to furnish adequate information; counsel for the parties are the main source of information concerning the settlement. It is the proponents' burden to explain how the settlement was reached and to prove that it is fair, adequate, and reasonable. *Id.*

**1) The Possible Range of Recovery and the Certainty of Damages**

■ Proponents failed to furnish significant information about the estimate of the possible range of recovery which class members will surrender in exchange for the settlement. Proponents contend only that the settlement is "unquestionably superior to another possibility: that no recovery would be obtained after years of further litigation." Certainly, this possibility is always present in litigation and is indeed not helpful to the court in evaluating the possible range of recovery.

---

**2.** Rule 23(e) provides, "A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

**3.** Both the plaintiffs and the settling defendants have come to a proposed compromise of the controversy, and both are interested in obtaining court approval. Both the plaintiffs and the settling defendants are the proponents of the settlement. Newberg and Conte § 11.42 at 11–95.

The original state court petition alleges that the value of any claim does not exceed $20,000, but does not reveal the basis for the estimate. The only other information furnished to the court regarding extent of damages is contained in a memorandum on behalf of plaintiffs filed December 13, 1993 in support of their motion to remand. In arguing that the claim of plaintiffs and the purported members of the class fall well below federal jurisdictional amount, counsel declares: "[t]he evidence will establish that a parent purchasing infant formula has been defrauded out of about $835.35 per year per infant." Brief of plaintiffs, p. 17.

The brief offers assumptions but no affidavits or other factual information to support the asserted loss figure. Since counsel at that time was attempting to establish that the claims were all well below the then $50,-000 federal jurisdictional amount, the court must assume that the sum of $835.85 per year per child is the absolute minimum amount that a jury would be asked to award. Taking counsel at their word, the court concludes that each member of this absentee class will be required to surrender a claim worth at least $2507.55 (antitrust damages are trebled) per child per year under the terms of the settlement now proposed to the court.

Under the terms of the proposed settlement agreement, counsel for plaintiffs would be paid one-third of the fund of $4,350,000, about one and one-half million dollars, plus litigation expenses (now totaling about $33,000). Each named plaintiff (class representative) would be awarded $1500. The balance of the fund, less notice costs and settlement expenses, would be distributed to the members of the class. According to counsel for plaintiffs, more than four hundred thousand claims had been filed as of the date of the fairness hearing. It does not take a mathematical wizard to see that each individual $2500 claim will be surrendered for a payment of no more than four, five, or six dollars.

## 2) The Factual and Legal Obstacles to Prevailing on the Merits [4]

The court is aware of some of the issues faced by plaintiffs (and the members of the class) in prosecution of this action. They are raised by the pending motions filed by defendants.

One very important issue is whether the plaintiffs and class members indeed have standing to assert an antitrust claim under La.R.S. 51:122 *et seq.* This issue has not been addressed by a Louisiana court. Federal antitrust law is the model for Louisiana's law and Louisiana courts frequently follow federal precedent in this area. Since it is clear that indirect purchasers do not have standing under federal antitrust law, *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), this issue is quite serious. In addition to the standing problem, defendants raise other significant arguments regarding plaintiffs' ability to recover under Louisiana law. These arguments include plaintiffs' ability to demonstrate that the Louisiana antitrust statute is intended to cover interstate conspiracies and is not restricted to intrastate conspiracies since the conspiracy here, if there was one, was interstate. Again, this is an issue that has not been addressed by a Louisiana court.

The court also recognizes the existence of evidentiary problems. One such evidentiary problem is whether the plaintiffs can prove that, as indirect purchasers, they sustained injuries, as opposed to the retailers who were direct purchasers from defendants. Defendants have submitted evidence in support of their pending motions that the expert upon whom plaintiffs most heavily rely for damages has already testified, in prior unrelated litigation brought by retailers, that the retailers absorbed the entire cost and no consumer was damaged.

The court essentially has no information regarding any weakness which might be found on the defense side, although there must be some, since the defendants have put up the sums of $2,350,000 and $2,000,000 respectively, not insignificant amounts, to buy their peace.

4. The court observes that all of these problems with the claims of plaintiffs were, or should have been, well known to experienced counsel before the action was commenced.

Although a cash settlement amounting to only a fraction of the potential recovery does not in itself render a settlement unfair or inadequate, the court finds that the members of this class would literally be no worse off if their case were tried to an adverse verdict. Plaintiffs may face serious and significant barriers to recovery in this case, but the members of the class (as opposed to class counsel, representative plaintiffs and defendants) have little to lose and everything to gain by pressing on to trial regardless of the alleged complexity and expense of continued litigation.

### 3) The Stage of Proceedings and the Amount of Discovery Completed

■ Another factor to consider is the stage of proceedings and the amount of discovery completed. Though the court need not possess evidence to decide the merits of the issue, a court should be satisfied that class counsel had sufficient information to adequately assess the strength of the plaintiffs' claims. *In re Ford Motor Co. Bronco II Products Liability Litigation,* 1995 WL 222177, (E.D.La. April 12, 1995) (No. Civ. A. MDL–991).

This action is one of seventeen similar suits filed against the same defendants in different states. According to counsel for plaintiffs, the applicant law firms have worked as a team of national counsel in each of the related actions. Although the action has been pending here for about three years and some issues have been litigated and appealed, all such prior rulings related solely to the issue of subject matter jurisdiction. *See In re Abbott Laboratories,* 51 F.3d 524 (5th Cir.1995). The court has not yet addressed any issues related to the merits of the litigation, although, as noted above, there are now pending motions by the defendants to dismiss or alternatively for summary judgment which relate to the construction of Louisiana's antitrust statute.

Counsel have informed the court that extensive discovery [5] has taken place in all seventeen cases and that the action in Kansas was tried to verdict, which was in favor of

defendants. The court has not been informed as to the details of the Kansas verdict, such as whether the jury factually found no conspiracy or whether the result was dictated by some peculiar feature of Kansas law.

In short, although sufficient discovery may have been conducted, the court has little information relating to the factual bases of the claims made by either side.

### 4) The Absence of Opposition

Plaintiffs' counsel argue that the fact that no objections have been received from any of the "many thousands of class members firmly supports final approval of the settlements." The lack of objection may not indicate general approval among members of the absentee class. As one court has stated:

> [a] low level of vociferous objection is not necessarily synonymous with jubilant support. In many class actions, the vast majority of class members lack the resources either to object to the settlement or to opt out of the class and litigate their individual cases. *In re Corrugated Container Antitrust Litigation,* 643 F.2d 195, 217–18 (5th Cir.1981).

That situation exists with the class members in this litigation. This settlement class is composed of parents who have children now between the ages of four and sixteen. It is reasonable to assume that few of them possess sufficient time, knowledge, and resources to follow the procedures set forth in the notices for objecting or opting out of the class.

Moreover, as counsel acknowledged at the fairness hearing, the wording of the notices caused some confusion among class members. The notices which were published in Louisiana announce that an award of $1500 to each **named plaintiff** will be sought from the court. Counsel indicated that some members of the class have interpreted that to mean that each **member of the class** will receive the sum of $1500, rather than the four or five dollars each class member is likely to receive. This confusion among class members is of significant concern to the

---

5. In brief, counsel furnished the names of 26 people whose depositions have been taken but no

information as to what they said has been submitted to the court.

court. Those class members who think they are going to receive a $1500 windfall are unlikely to raise many objections.

### 5) Whether the Settlement was the Product of Collusion or Fraud

■ A court must insure that the settlement was the result of arm's length negotiations and not the result of fraud or collusion. Though no evidence exists that this was anything other than an arm's length transaction, we must still recognize one of the dangers inherent in class action settlements—"that class counsel 'is potentially an unreliable agent of his principals' and may try to 'sell out' the class in exchange for substantial attorneys' fees." *In re Ford Motor Co.*, 1995 WL 222177 at 6 citing *Mars Steel Corporation v. Continental Illinois National Bank and Trust Company of Chicago*, 834. F.2d 677, 681 (7th Cir.1987).

In discussing the possibility of collusion in class actions, the court in *Bowling v. Pfizer, Inc.* 143 F.R.D. 141, 152 (S.D.Ohio 1992) recognized that "[a] defendant has an interest in minimizing its liability; class counsel has an interest in his attorney's fees." Stated another way, the possibility exists, particularly in settlement class action proposals, that "substantial rights of the class may be bargained away in exchange for relief which inures primarily to the named plaintiffs or to class counsel." *Holden v. Burlington Northern, Inc.*, 665 F.Supp. 1398, 1406 (D.Minn. 1987) citing *Armstrong v. Board of School Directors of the City of Milwaukee et al.*, 616 F.2d 305, 313 (7th Cir.1980).

Such a concern is present in this case. Counsel for plaintiffs argue in their motion for attorneys' fees that the settlement represents 7.7% of the gross amount which plaintiffs' experts estimated as damages for purchases in Louisiana and argue that in light of the significant legal problems [6] faced by the plaintiffs the "settlements constitute an excellent result." On the basis of the record before it, the court disagrees. The court does not find that plaintiffs' counsel has tried to "sell out" the class in exchange for substantial attorney's fees, and the court does find that the proposed settlement is fair,

adequate and reasonable to the class representatives, to class counsel, and to the defendants. The record does not establish that it is fair, adequate and reasonable to the members of the absentee class.

Accordingly, after careful consideration, the court finds that the proponents have failed to present sufficient information to allay the concerns of the court. The motion for final approval of the settlement is hereby DENIED. Because the settlement is not approved, the court does not reach counsel's motion for attorneys' fees and reimbursement of expenses.

---

**6.** The court again notes that these problems were all known before suit was filed.