**James CAREY, et al**

v.

**E.I. duPONT de NEMOURS & COMPANY**

No. CIV.A. 01–469–A.

United States District Court,
M.D. Louisiana.

June 28, 2002.

---

**6.** 26 F.Supp.2d 82 (D.D.C.1998).

Anthony Terrell Marshall, Shawn Rene' Bush, Gonzales, LA, for Plaintiffs.

Lawrence E. Abbott, Sarah E. Iiams, Monique M. Weiner, Abbott, Simses & Kuchler, New Orleans, LA, for Defendants.

## RULING ON SUBJECT MATTER JURISDICTION

JOHN V. PARKER, District Judge.

This matter is before the court on Magistrate Judge Stephen C. Riedlinger's *sua sponte* finding of lack of subject matter jurisdiction over some of the claims of plaintiffs in this action. (doc. 17). The plaintiffs have filed an objection. (doc. 18). There is no need for oral argument. Jurisdiction is alleged under 28 U.S.C. § 1332. There is no dispute regarding complete diversity of citizenship; the issue is the amount in controversy and supplemental jurisdiction under 28 U.S.C. § 1367.

**Factual Background**

This is a tort action arising from a process upset, which occurred on April 20 and 21, 2001 at duPont's Burnside facility where sulfuric acid is manufactured. On June 12, 2001, the plaintiffs filed a complaint seeking damages for personal injury allegedly caused by the process upset. On

August 31, 2001, the plaintiffs filed a motion to amend the complaint, which was granted. This amendment added twenty-six (26) additional plaintiffs. On November 14, 2001, the court granted leave to file a second amending complaint. The second amending complaint (doc. 14) increased the total number of plaintiffs to thirty-three (33).

During a scheduling conference, the magistrate judge questioned whether the amount in controversy as to each plaintiff was sufficient to support subject matter jurisdiction in accordance with 28 U.S.C. § 1332.[1] Thereafter, counsel for the parties submitted memoranda to address the issue and the magistrate judge issued a report and recommendation, which concluded that the court may properly exercise subject matter jurisdiction over the claims of two (2) of the plaintiffs because as to each claim the amount in controversy exceeds the $75,000 amount. The magistrate judge concluded that none of the remaining claims meet the amount in controversy test and that they should be dismissed because "exercising supplemental jurisdiction over [the smaller] claims would be inconsistent with the jurisdictional requirements of section 1332." (doc. 17, p. 5).

The plaintiffs object to the recommendation of the magistrate judge, asserting that they can produce evidence to support the amount in dispute as each of the plaintiffs' claims. The defendant supports the recommendation of the magistrate judge. Neither side cites the applicable law.

Because the magistrate judge's recommendation overlooks prior holdings of this court and binding jurisprudence from the Fifth Circuit, the court declines to accept the recommendation of the magistrate judge. (In deference to the magistrate judge, it should be noted that neither of the lawyers presented the applicable jurisprudence to him.) In an attempt to clear up confusion as to the effect of 28 U.S.C. § 1367, at least in this one small court (and until the Supreme Court weighs in on the issue), the court writes a fuller explanation than usual.

### Standard of Review

■ On matters referred to the magistrate judge under 28 U.S.C. § 636(b), the district court makes a *de novo* determination of those parts of the magistrate judge's report, findings, or recommendations to which a timely objection is made. 28 U.S.C. § 636(b)(1); *Garcia v. Boldin*, 691 F.2d 1172, 1179 (5th Cir.1982). The requirement that the district judge make a "*de novo*" determination is satisfied by consideration of the record as developed before the magistrate judge without holding a *de novo* hearing. The district court may accept, reject, or modify in whole or in part, the magistrate judge's findings or recommendations.

### Original Jurisdiction

■ Like all other governmental powers, the judicial power of the United States is found in the Constitution. Accordingly, that is the first inquiry. Federal district courts are courts of limited jurisdiction. They are empowered to hear only such cases as are within the judicial power of the United States, as defined in the Constitution, and have been entrusted to them by a jurisdictional grant by the Congress. *Bender v. Williamsport Area School District*, 475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). It is well settled that the party seeking to invoke the jurisdiction of federal courts must demonstrate that the case is within the competence of the court. The moving party may invoke jur-

---

1. In this court the magistrate judges have standing orders to *sua sponte* raise the issue of subject matter jurisdiction, particularly in diversity cases. No individual referral is required.

isdiction by producing factual allegations that sufficiently show that the claims are likely above the jurisdictional minimum. *Simon v. Wal–Mart Stores, Inc.*, 193 F.3d 848 (5th Cir.1999); *Luckett v. Delta Airlines*, 171 F.3d 295 (5th Cir.1999). The presumption is that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter does exist. *Turner v. Bank of North America*, 4 Dall. 8, 4 U.S. 8, 1 L.Ed. 718 (1799).

The issue here is jurisdictional amount in a diversity of citizenship case. In that regard, the Constitution, Article III, Section 2, provides, in part,: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;... to Controversies between two or more States;-between a State and Citizens of another State; between Citizens of different States;...." Significantly, there is no reference to amount in controversy in the constitutional grant. It is clear that the judicial power of the United States extends to all controversies "between citizens of different states," without regard to an amount in controversy.

### Congressional Grant of Jurisdiction

 Article III, Section 1, vests the judicial power of the United States in one Supreme Court and "in such inferior courts as the Congress may from time to time ordain and establish." This language grants to the Congress the discretion to determine whether any "inferior courts" are to be created. *Lockertly v. Phillips*, 319 U.S. 182, 187, 63 S.Ct. 1019, 87 L.Ed. 1339 (1943). Although the Congress may vest in the lower federal courts full power to hear all cases to which the federal judicial power extends under Article III, Section 2 of the Constitution, it is not required to do so. The power of the Congress to abolish the lower federal courts logically includes the power to limit the kinds or amount of cases that such courts can hear.

As the commentators put it:

> The Constitution does not require that any particular amount be in controversy between the parties in order to invoke the subject matter jurisdiction of the federal courts. However, the Congress is not prevented from establishing a jurisdictional amount requirement, since it need not grant all of the Article III judicial power to the federal courts. Thus, from the earliest days of the Republic, there has been a statutory requirement applicable to some classes of cases that more than a certain amount be in controversy in order to bring an action in the federal trial courts.

14 B Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice and Procedure: Jurisdiction, § 3701 (3. ed 1998) (citations omitted).

Of course, diversity jurisdiction is one of those classes; section 1332 currently requires that the amount in controversy exceed $75,000 exclusive of interest and costs.

In the early case of *Sheldon v. Sill*, 49 U.S. 441 (8 How. 441), 12 L.Ed. 1147 (1850), the petitioner challenged whether the Judiciary Act of 1789, as enacted by the Congress, could refuse to vest in lower federal courts the entire grant of diversity jurisdiction as authorized by the Article III of the Constitution, quoted above, which extends judicial power to all diversity cases. The Court upheld the statute and opined "[i]t must be admitted, that if the Constitution had ordained and established the inferior courts, and distributed to them their respective powers, they could not be restricted or divested by Congress." *Id.* at 448, 8 How. 441. However, because the Constitution did not do this, the Court concluded that the Congress may withhold from any court of its cre-

ation the jurisdiction of any of the enumerated controversies. In sum, inferior courts that are created by statute can have no jurisdiction other than that which the statute confers.

From the foregoing information we learn three (3) important matters:

1) The Congress has the constitutional power to restrict the jurisdiction of district courts to an amount in controversy in diversity cases; and

2) The jurisdictional amount restriction is statutory, not constitutional; and

3) Because the restriction is statutory, the Congress has the power to modify (as it has done throughout our history) or to eliminate it—either as to all diversity cases or to specific classes of claims.

▇▇ It should be equally clear that the Congress has no power to modify the provisions of Article III, Section 2 extending the judicial power to controversies "between Citizens of different States." The Congress cannot confer jurisdiction upon inferior courts to hear state law claims between citizens of the same state. From this flows the familiar jurisprudential rule that in diversity cases, there must be complete diversity of citizenship between all plaintiffs and all defendants, *Strawbridge et al. v. Curtiss, et al.*, 7 U.S. 267 (3 Cranch 267), 2 L.Ed. 435 (1806).

## A. Supplemental Jurisdiction

The converse of the Judiciary Act of 1789, as discussed in Sheldon, is seen in 28 U.S.C. § 1367, (added December 1, 1990), which provides federal courts with "supplemental jurisdiction."

Section 1367 (a) provides:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

By this enactment, the Congress has vested district courts with the entire grant of diversity jurisdiction under Article III, Section 2 of the Constitution "in any civil action of which the district courts have original jurisdiction."

This broad grant of supplemental jurisdiction in section 1367(a) is subject to the exceptions provided in subsections (b) and (c) and as provided otherwise by statute. Subsection (c) simply provides for the circumstances in which a district court may decline to exercise the supplemental jurisdiction granted by subsection (a)—a matter with which we are not here concerned.

Subsection (b), on the other hand, imposes important statutory restrictions upon the exercise of such jurisdiction where original jurisdiction is founded "solely" on diversity of citizenship. It reads:

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

To summarize up to this point, section 1367(a) contains a broad grant of addition-

al or supplemental subject matter jurisdiction to the district courts. In any action in which the district court already has subject matter jurisdiction over a claim, subsection (a) grants additional jurisdiction "over all other claims" that form part of the same case or controversy.

■ This broad grant is limited in diversity cases by section 1367(b). If the "other claims" sought to be included in federal jurisdiction involve Rule 14, 19, 20 or 24 of the Federal Rules of Civil Procedure, then the court must determine whether the exercise of jurisdiction over those claims "would be inconsistent with the jurisdictional requirements of section 1332." 28 U.S.C. § 1367(b). If none of these rules are involved in the "other claims" the court may proceed to exercise supplemental jurisdiction. If, and only if, any such claim involves one of the enumerated rules need the court consider whether the exercise of supplemental jurisdiction is consistent with the jurisdictional requirements of section 1332.

Note that the rules enumerated in section 1367(b) all deal with joinder of additional parties: Rule 14–third party practice; Rule 19–compulsive joinder; Rule 20–permissive joinder; and Rule 24–intervention.

This court suggests that the reason for enumerating the specific rules so listed in section 1367(b) is to avoid the possibility that some additional party might be added who is non-diverse in citizenship with any opposing party. The addition of a non-diverse party would destroy diversity jurisdiction. As we have seen, diversity of citizenship is mandated by the Constitution and the Congress would be "pushing the envelope" of its powers if it attempted to authorize the district courts to exercise jurisdiction over state law claims between citizens of the same state. That would surely be "inconsistent with the jurisdictional requirement of section 1332."

As we have seen, however, jurisdictional amount is not a part of the Constitution; it was created by the Congress in the Judiciary Act of 1789 and it may be modified, waived or abolished by the Congress. In section 1367(a) the Congress has abolished any jurisdictional amount over state law claims in diversity cases, but only where at least one claim does meet the amount in controversy requirement of section 1332, thus vesting the court with traditional subject matter jurisdiction under section 1332 before supplemental jurisdiction may even be considered.

Almost immediately after section 1367 was enacted, a fierce debate arose (at least in academia) as to whether the statute overruled the so-called *Zahn* "complete amount in controversy" rule.

This court first considered the then new section 1367 in *Garza v. National American Ins. Co.*, 807 F.Supp. 1256 (M.D.La. 1992). That case involved an automobile accident in which several members of the same family were plaintiffs claiming injury in the same accident. Diversity of citizenship was complete between all plaintiffs and the defendant. The lead plaintiff's injuries were sufficiently serious to meet the then $50,000 amount in controversy test, but the remaining plaintiffs asserted minor claims, which could not reach that level. Under the rule of *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), (the claim of each plaintiff in a diversity case must independently meet the amount in controversy requirement) the court would clearly have no jurisdiction over the claims of the less seriously injured members of the Garza family. This court held that by enacting section 1367 the Congress "legislatively overruled"[2] the Zahn line of cases. The

---

**2.** The court used the words "legislatively overruled" but upon reflection concludes that

court declined to become involved in the argument among law professors over "legislative history," stating:

These pre- § 1367 cases include *Zahn v. International Paper Co.*, ...However, this court finds that the Congress said what it meant and that the Congress meant what it said-the language of § 1367 unavoidably overrules these pre- § 1367 cases in those instances where the requirements of § 1367(a) are fulfilled and the exceptions of § 1367(b) are inapplicable. Therefore, the court finds that supplemental jurisdiction exists over the claims of the Garza family members because they are so related to the claim of Jack Garza as to form a single "case" under Article III of the United States Constitution. 807 F.Supp. at 1258 (citations omitted).

No appeal was taken from the ruling in the *Garza* case.

This court again considered section 1367, this time in the class action mode, in *Free v. Abbott Laboratories Inc.*, CA 93–CV–971, 1994 WL 117258 (M.D. La. April 5, 1994). In Abbott, the court extended its prior Garza holding to class actions, holding that where the named class representatives met the jurisdictional amount (thus conferring jurisdiction upon the court) section 1367 authorized the court to exercise supplemental jurisdiction over the state law anti-trust claims of the members of the class although none of those claims met the jurisdictional amount.

Although the Supreme Court has not spoken to the issue, the Fifth Circuit has settled the debate for courts within its ambit: in *In re Abbott Laboratories*, 51 F.3d 524 (1995), the Fifth Circuit affirmed this court's holding that section 1367 "leg-islatively overruled"[3] the *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) line of cases, and permits a district court to exercise supplemental jurisdiction over members of a class, "although they did not meet the amount-in-controversy requirement, as did the class representatives." *Abbott*, 51 F.3d at 529. Alluding to the legislative history issue, the Fifth Circuit explained:

We cannot search legislative history for congressional intent unless we find the statute unclear or ambiguous. Here, it is neither. The statute's first section vests federal courts with the power to hear supplemental claims generally, subject to limited exceptions set forth in the statute's section. *Id.*, at 528.

. . . . .

... [T]he wisdom of the statute is not our affair beyond determining that overturning *Zahn* is not absurd. We are persuaded that under § 1367 a district court can exercise supplemental jurisdiction over members of a class, although they did not meet the amount-in-controversy requirement, as did the class representatives. *Id.*, at 529.

For additional explanation, see 16 James Wm. Moore et al., Moore's Federal Practice, § 106.65 (3ed.2001), Comment, Judicial Interpretation of the Effect of the Supplemental Jurisdiction Statute on the Complete Amount in Controversy Rule: A Case For Plain Meaning Statutory Construction, 46 Emory L.J. 435, n. 209 (1997) (collecting cases in which district courts within the Fifth Circuit have applied the Abbott holding in both class-action and non-class action cases); see also *Stromberg Metal Works v. Press Mechanical*, 77 F.3d 928 at 930–932 (7th Cir.1996) (approving

---

such language is inept, loose and imprecise. There is certainly nothing lacking in the reasoning of the *Zahn* cases. They were not "overruled"; the Congress simply changed the law-as is its prerogative. The changed law makes those cases no longer applicable.

**3.** See footnote number two (2), *supra.*

Abbott and explaining that its holding extends beyond the class action context); and *Garza*, 807 F.Supp. 1256 (M.D.La. 1992).

It is clear that, at least in the Fifth Circuit, where a district court has jurisdiction over any claim asserted under diversity of citizenship, section 1367 confers jurisdiction upon the court "over all other claims that are so related...that they form part of the same case or controversy under Article III...."

## B. Case or Controversy

Once original jurisdiction is established, it is then necessary to determine whether the matter before the court forms part of the "same case or controversy." The "same case or controversy" requirement is satisfied by an affirmative showing the claims arose out of a "common nucleus of operative fact," *United Mine Workers of America v. Gibbs*, 383 U.S. 715 at 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and the same "transaction or occurrence," *Moore v. New York Cotton Exchange*, 270 U.S. 593 at 609–611, 46 S.Ct. 367, 70 L.Ed. 750 (1926). Therefore, the proper focus concerning the application of 28 U.S.C. § 1367 is whether the district court has original jurisdiction and, further, whether all the other claims form part of the same case or controversy of the event giving rise to the court's original jurisdiction.

Since the court has original jurisdiction over the claims of two (2) of the plaintiffs, Cary and Williams, the dispositive issue becomes whether the other joined plaintiffs allege claims that are so related to the claims of Cary and Williams (the claims over which the court has original jurisdic-

tion) as to form part of the same case or controversy within the meaning of Article III. Under the seminal case of *Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) the Court explained that, in the context of federal question jurisdiction, federal claims and state law claims form a single constitutional case if they "derive from a common nucleus of operative fact"; and in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) the Court accepted the assumption that the "'common nucleus of operative fact' test also determines the outer boundaries of constitutionally permissible federal jurisdiction when that jurisdiction is based upon diversity of citizenship."

In this case, Cary claims that on April 20, 2001, the defendant, a Delaware corporation who is a citizen of another state, allegedly released sulfuric acid into the air, which exposed him to toxins thereby causing him to suffer injuries. Subsequently, counsel for the plaintiffs filed a supplemental and amended complaint (doc. 7) that named numerous plaintiffs, including Williams, over whose claim the court has already determined that it has original jurisdiction over. The claims set forth in this amended complaint are the very claims alleged by Cary.[4] That is, these new plaintiffs are alleging that the same diverse defendant committed the same tortious act that caused the other plaintiffs to suffer injury on the same date. Conduct that gives rise to different kinds of injuries to different kinds of persons is a single case or controversy. 16 James Wm. Moore et al., Moore's Federal Practice, § 106.24[7] (3ed.2001). Obviously the plaintiffs' claims

---

**4.** The court notes the plaintiff's initial *Complaint* (doc. 1), paragraphs five (5) through eight (8), contains the "general allegations" of the plaintiff's claims. The plaintiffs' *Supplemental and Amended Complaint* (doc. 7), paragraphs five (5) through eight (8), serves

to amend, supplement and restate these "general allegations" to "encompass all additional plaintiffs." Thus, the newly encompassed and additional plaintiffs are alleging the very operative facts asserted by the original plaintiff.

 

are "derive[d] from a common nucleus of operative fact" in accordance with *Gibbs*, 383 U.S. 715, 86 S.Ct. 1130 (1966) and the jurisdiction of this court is still maintained by "diversity of citizenship," in accord with *Owen*, 437 U.S. 365, 98 S.Ct. 2396 (1978). Therefore, the court finds the claims set forth by these plaintiffs "are so related" to the claims in the action with the original jurisdiction that they form part of the same case of controversy under Article III of the United States Constitution in accordance with 28 U.S.C. § 1367.

**Conclusion**

For the foregoing reasons, the court finds that original jurisdiction exists as to the claims of Cary and Williams and that supplemental jurisdiction exists over the claims made by all the other plaintiffs. The court hereby declines to accept and disapproves the report and recommendation issued by United States Magistrate Judge Stephen C. Riedlinger on the issue of lack of subject matter jurisdiction (doc. 17). This action is referred to the magistrate judge for additional proceedings.