**Julianne FARKAS, et al., Plaintiffs,**

v.

**BRIDGESTONE/FIRESTONE, INC., Defendant.**

No. Civ.A.3:00CV–00502H.

United States District Court, W.D. Kentucky at Louisville.

Sept. 22, 2000.

Ann B. Oldfather, Lea A. Player, Oldfather & Morris, Louisville, KY, Timothy D. Lange, Benson, Byrne & Risch, LLP, Louisville, KY, David Coorssen, Louisville, KY, Cyrus Mehri, Michael Kanovitz, Gouri N. Bhat, Mehri, Malkin & Ross, PLLC, Washington, DC, Scott Johnson, Jonathan Shub, Sheller, Ludwig & Badey, P.C., Philadelphia, PA, for plaintiffs.

Charles M. Pritchett, Jr., William T. Donnell, William Edward Skees, Brown, Todd & Heyburn, Louisville, KY, Edward J. Sebold, Hugh R. Whiting, Mark Herrmann, Jones, Day, Reavis & Pogue, Cleveland, OH, for defendants.

[New York State Consumer Protection Board], Paul A. Casi, II, Hoffman & Casi, Louisville, KY, Christopher J. Hanifin, New York State Consumer Protection Board, Albany, NY, for amicus.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Plaintiffs Julianne Farkas and Nicole Pang filed suit in state court asking for injunctive relief requiring Firestone to reimburse Plaintiffs and all others similarly situated for the cost of replacing defective tires. After Firestone removed this case to federal court, Plaintiffs now seek remand to state court arguing that this

Court lacks subject matter jurisdiction. The motion presents complex issues of federal subject matter jurisdiction upon which case law is unsettled. After carefully considering the parties' pleadings and thoroughly discussing the issues in a conference with counsel, the Court concludes that it lacks jurisdiction and remands to the Jefferson County Circuit Court.

### I.

The facts pertinent to this issue appear undisputed. On August 9, 2000 Bridgestone/Firestone, Inc. ("Firestone") initiated a recall of approximately 6.5 million tires (the "Subject Tires") which it considered defective or potentially defective. Due to insufficient inventory on hand to replace all the recalled tires, Firestone gave tire owners the option of purchasing replacements from competitors and receiving reimbursement up to one hundred dollars per tire. Firestone announced the actual terms of this recall/reimbursement program on August 16, 2000. Oddly, this initial announcement required consumers to apply for reimbursement by August 17, 2000.

Meanwhile, after the August 16 announcement terminating the reimbursement program on August 17, but before the August 17 announcement continuing the program indefinitely, plaintiffs Julianne Farkas and Nicole Pang filed a class action suit in Jefferson Circuit Court. Late on the evening of August 16, Plaintiffs obtained a Temporary Restraining Order preventing Firestone from discontinuing reimbursing customers who replaced their subject tires with competitor's tires. Sometime on August 17, 2000 Firestone announced that it would continue the reimbursement program indefinitely.[1]

The complaint alleged four causes of action: violation of Kentucky's consumer protection laws, breach of contract, recklessness, and negligence. The Plaintiffs sought an injunction preventing Firestone from terminating the reimbursement program and a declaration that Firestone is financially responsible for replacing the Subject Tires. On August 21, 2000 Firestone removed the case to the Western District of Kentucky.

Unlike state courts of general jurisdiction, federal courts have limited jurisdiction and may not hear a case absent constitutional and statutory authority. See Erwin Chemerinsky, FEDERAL JURISDICTION 258 (3d. ed., 1999). "If at any time before final judgement it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." 28 U.S.C. § 1447(c) (2000) (emphasis added). Here Firestone asserts two grounds for jurisdiction: federal question jurisdiction and diversity jurisdiction. The Court will discuss each in turn.

### II.

District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case "arises under" the laws of the United States if a federal question is presented on the face of a well pleaded complaint. See *Louisville and Nashville Railroad v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). This "well pleaded complaint" rule holds that even though a federal question will arise as a defense to plaintiffs claims, that alone is insufficient for federal question jurisdiction. See *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (quoting *Louisville and Nashville Railroad*, 211 U.S. at 152, 29 S.Ct. 42). This rule applies to the defense of pre-emption: "since 1887

---

1. The parties dispute the reason for Firestone's decision to continue the recall/reimbursement program. Plaintiffs say that Firestone changed course in response to the Temporary Restraining Order. Firestone says that it was unaware of it and decided to continue the recall/reimbursement after successfully completing negotiations with the National Highway Traffic Safety Agency.

it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption." *Franchise Tax Board,* 463 U.S. at 14, 103 S.Ct. 2841.

 Even if Defendants rely on preemption as a defense to Plaintiffs' state law claims, those claims are not considered to "arise under" federal law for the purposes of asserting federal question jurisdiction. *See Louisville and Nashville Railroad,* 211 U.S. at 149, 29 S.Ct. 42. However, the Supreme Court has recognized an exception to this rule where "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Insurance v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

Complete pre-emption in a jurisdictional context is different from, and narrower than, ordinary pre-emption raised as a defense to a state law claim. In *Taylor* the Supreme Court considered the difference between the two in the context of the Employee Retirement Income Security Act ("ERISA"). The Court explained that the particular ERISA section at issue, section 502(a), was different than the general ERISA pre-emption at issue in *Franchise Tax Board. Taylor,* 481 U.S. at 64–65, 107 S.Ct. 1542.[2] Concurring with *Franchise Tax Board* that "pre-emption, without more, does not convert a state claim into an action arising under federal law," the Supreme Court in *Taylor* found that Section 502(f) of ERISA so clearly manifested a Congressional intent to pre-empt state law as to recharacterize an action arising under state law into one arising

under federal law. *See Taylor,* 481 U.S. at 64, 107 S.Ct. 1542.

To apply the complete pre-emption doctrine, therefore, the Court must find that Congress intended to completely pre-empt state law causes of action. *See id.* at 66, 107 S.Ct. 1542 (holding "the touchstone of the federal district court's removal jurisdiction is not the obviousness of the pre-emption defense but the intent of Congress"). To date, the Supreme Court has recognized complete pre-emption in just three areas: labor relations, ERISA, and tribal claims. *See* 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3772.1 (1998). While a number of district and appellate courts have considered complete pre-emption in various statutory contexts, *see id.* at n. 26, 107 S.Ct. 1542 (listing decisions considering various statutes), the Court has yet to articulate a clear test. *See id.* at n. 37, 107 S.Ct. 1542 (describing several different formulations of a "test" for complete pre-emption). The statute at issue here is the Motor Vehicle Safety Act ("MVSA"), 49 U.S.C. § 30101 (2000), which delegates to the National Highway Traffic Safety Agency ("NHTSA") the authority to monitor and correct defects in cars and car equipment.

Without deciding whether NHTSA's recall authority pre-empts Plaintiffs' state law causes of action, it seems clear that Congress did not intend for the MVSA to completely pre-empt state law to the extraordinary degree required by *Taylor. See* 481 U.S. at 66, 107 S.Ct. 1542 (stating that "an obvious pre-emption defense does not, in most cases, create removal jurisdiction" and finding complete pre-emption where Congress "clearly manifest[s]" an intent to remove causes of action from state court).[3] Section 30103(d) of the

2. The Supreme Court focused closely on section 502(f) which says: "The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action." *Id.* at 65, 107 S.Ct. 1542.

3. *See Campbell v. General Motors,* 19 F.Supp.2d 1260, 1273 (N.D.Ala.(1998)) (applying a three part test to consider whether the MVSA completely pre-empts state law causes of action the court held, "The MVSA fails each and every one of these tests. The statute contains no hints that Congress intended it to completely pre-empt state law, and no broad provisions granting federal

MVSA states that the remedies provided by NHTSA's recall authority are in addition to "other rights and remedies under other laws of the United States or a State." 49 U.S.C. § 30103(d) (2000).

Defendants see a distinction between "defects" and "safety standards," and argue that the savings clause in 49 U.S.C. § 30103(a)–(e) does not apply to " 'defect'-based recalls." The Court does not agree that the statutory language supports this distinction. The savings clause in section 30103(d) explicitly applies to sections 30118–30121. Section 30120(b), which covers tire remedies, applies to "a defective *or* noncomplying tire" (emphasis added). Therefore, it seems logical that the savings clause applies to both safety standards and tire defects as well. Regardless of how one parses the statute, at most it establishes an affirmative defense against Plaintiffs' claims. It does not establish a "clearly manifest[ed]" Congressional intent to convert all state law causes of action relating to motor vehicle defects removable to federal court in the manner relied upon in *Taylor*, 107 S.Ct. 1542. *See* 481 U.S. at 66, 107 S.Ct. 1542. Our circumstance is more similar to the *Franchise Tax Board* case where pre-emption was a likely defense to a state law cause of action.

Indeed, the Court could analyze any number of factual issues, such as: whether NHTSA has authority over reimbursements or whether Firestone has triggered such authority by initiating a recall program which includes reimbursement; whether a NHTSA recall is underway and, if so, what obligation has Firestone to continue it; and whether Kentucky consumer protection laws could conflict with or hinder the recall. These are questions that a state court must answer when considering

the necessity and appropriateness of injunctive relief which may conflict with the activities of a federal agency. However, none of those answers would suggest that the MVSA clearly evinces a Congressional intent to completely remove a case such as this from state courts. *See Taylor*, 481 U.S. at 66, 107 S.Ct. 1542.

In view of this analysis the Court must conclude that Plaintiff's complaint presents no question which arises under federal law for the purposes of conferring jurisdiction under 28 U.S.C. § 1331. *See Louisville and Nashville Railroad v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

### III.

■ Firestone, in the alternative, claims that this Court has diversity jurisdiction. Federal courts have diversity jurisdiction where the suit is between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Plaintiffs admit that the parties are completely diverse, but contest that the amount at issue exceeds $75,000. Plaintiffs' state court complaint expressly disclaims any damages or restitution above $74,999 per class member. Such a disclaimer, "where a defendant seeks to remove a case where the plaintiff has specifically claimed less than the federal amount-in-controversy requirement ... should preclude removal." *Gafford v. General Electric Co.*, 997 F.2d 150, 157 (6th Cir. 1993). Nevertheless, removal may be appropriate, where Firestone can show a "reasonable probability" or "substantial likelihood" that Plaintiffs intend to seek damages in excess of $75,000. *Id.*

Plaintiffs seek declaratory relief, injunctive relief, and attorneys fees to ensure that Firestone continues its consumer re-

court jurisdiction over vehicle safety issues. On the Contrary, the legislative history indicates that Congress intended to keep state claims and state forums open to plaintiffs."); *see also Richards v. Michelin Tire*, 786 F.Supp. 959, 963 ("The statutory scheme in 15 U.S.C. § 1381, et seq. [recodified in 49 U.S.C. § 30101, et seq.] does not evince an

intent to reserve the entire field of automotive safety regulation to the Federal government. Lawsuits involving automotive defects are common in modern tort law. Moreover, in the nearly twenty-six years since its enactment, MVSA has never been held to completely occupy the field of regulation.").

imbursement offer. First, they urge the Court to declare Firestone financially responsible for notifying class members and replacing the affected tires; to enjoin Firestone from revoking its promise to reimburse class members for replacing the affected tires; and to award attorneys fees. These requests raise two complex issues about how this Court should determine the amount in controversy. First, how should the Court value the equitable relief sought? Second, should the Court aggregate the attorneys fees to determine the amount in controversy?

### A.

It is not settled how one should determine the amount in controversy for purposes of assessing jurisdiction in an injunction case. Courts have developed a variety of approaches. *See* 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3703 (1998). Some courts determine the amount in controversy from the plaintiffs' perspective, *see, e.g., Kheel v. Port of New York Authority*, 457 F.2d 46, 48–49 (2nd Cir.1972); other courts from the viewpoint of the party seeking to invoke federal jurisdiction, *see, e.g., Bedell v. H.R.C. Ltd.*, 522 F.Supp. 732 (E.D.Ky. 1981); and still other courts from either viewpoint, *see, e.g., In Re Cardizem CD Antitrust Litigation*, 90 F.Supp.2d 819, 834–35 (E.D.Mich.1999). Regardless of the approach used, the Court finds that Firestone has not met its burden of proving that the amount in controversy exceeds $75,000. Therefore, the Court need not adopt a specific approach.

■ The Court resolves jurisdiction, instead, on the issue of aggregation. This analysis begins with the default rule preventing aggregation set forth in *Sellers v. O'Connell*, 701 F.2d 575, 579 (6th Cir. 1983). *Sellers* reiterates the "general rule" that "separate and distinct claims may not be aggregated, [but] aggregation is permissible when 'two or more plaintiffs unite to enforce a single title or right in which they have an undivided interest.'"

*Id.* (quoting *Snyder v. Harris*, 394 U.S. 332, 335, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969)). A group of plaintiffs may manifest this "single title or right" by possessing a "common and undivided interest in the relief sought" such that "if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs are increased." *Id.*

■ The gravamen of Plaintiffs' complaint is Firestone's alleged threat to discontinue reimbursement to customers who replace their defective tires with competitors' brands. Defendants could not properly remove this case because Plaintiffs would possess no common and unified interest in the relief under *Sellers*. First, Firestone's obligation would vary directly with the number of class members notified and reimbursed. The cost of notification and reimbursement would differ greatly if the class contained owners of 6.5 million tires, as the Plaintiffs contend, or 48 million tires, as Firestone claims. Second, class members would each stand to collect the same amount of money regardless of the number of their cohorts.

The request for injunctive relief does not change the analysis. If one plaintiff does not collect his share, the shares of the remaining plaintiffs are *not* increased, thus there is no "common and unified whole." *Sellers*, 701 F.2d at 579. This Court agrees with the analysis of Judge Nelson in *Campbell v. General Motors Corp.*, 19 F.Supp.2d 1260, 1267 n. 8 (N.D.Ala.1998):

> In most cases, it is impossible to draw a practical distinction between injunctive relief and a class-wide finding of liability for money damages. At least in class actions involving numerous, small, uniform claims, money damages flow essentially as a matter of course from a finding of liability. For example, had plaintiffs here sought and received a class-wide finding that their fuel pumps are defective and asked for money dam-

ages instead of replacement, each would almost assuredly receive substantially the same fixed cost of replacing the pump. That money payment clearly could not be aggregated, and this court cannot conclude that an in-kind equivalent should be treated differently.

Because both the injunction and declaration are separate and distinct for each class member, this Court cannot circumvent the clear holding of *Sellers* preventing aggregation.

## B.

■ This Court next turns to the question of attorneys fees, recognizing that neither the Supreme Court nor the Sixth Circuit has addressed whether aggregated the attorneys fees for an entire class determine the amount in controversy. Firestone urges this Court to adopt the Fifth Circuit's holding that courts should aggregate attorneys fees in proposed class actions. *In Re Abbott Laboratories*, 51 F.3d 524 (5th Cir.1995). The Kentucky statute at issue, however, differs from the Louisiana statute in *Abbott Laboratories* because it does not attribute attorneys fees specifically to the class representatives. *Compare* Ky.Rev.Stat.Ann. § 367.220 (2000)

(awarding attorneys fees "to the prevailing party") *with* La.Code Civ.Proc.Ann. art. 595 (West 2000) ("allow[ing] the representative parties" attorneys fees). In the view of this Court, that difference is a significant one.[4]

Allowing aggregated attorneys fees to determine the amount in controversy seems quite contrary to the clear mandate of *Sellers* and *Snyder*, unless the plaintiffs have common and undivided interest in that relief. Otherwise a defendant could properly remove to federal court almost any class action with diverse parties. This would effectively render moot much of the current law on aggregation. Therefore, this Court declines to aggregate the total attorneys fees to satisfy the amount in controversy requirement. *Accord Goldberg v. CPC International, Inc.*, 678 F.2d 1365, 1367 (9th Cir.1982); *Lauchheimer v. Gulf Oil*, 6 F.Supp.2d 339, 345–46 (D.N.J.1998); *Crosby v. America Online, Inc.*, 967 F.Supp. 257, 262 (N.D.Ohio 1997).[5]

## IV.

■ Firestone suggests that the Court should retain jurisdiction so that the case

---

**4.** These statutory differences have led several other courts to distinguish *Abbott Laboratories* in a similar way. *See, e.g., Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1079 (11th Cir. 2000) (holding reference to *Abbott Laboratories* "inapposite" because the "Florida statutes at issue here do not contain language indicating that the award of attorney fees should go to the class representatives"); *Darden v. Ford Consumer Fin. Co.*, 200 F.3d 753, 758 (11th Cir.2000) (declining to follow the 5th circuit due to different wording in Georgia statute); *McGowan v. Cadbury Schweppes, PLC*, 941 F.Supp. 344, 348 (S.D.N.Y.1996); *Ratliff v. Sears, Roebuck and Co.*, 911 F.Supp. 177, 179 (E.D.N.C.1995) (declining to follow *Abbott Laboratories* because "the relevant North Carolina statutes do not contain language specifically providing for fees to 'representative parties' ").

**5.** The parties seem to agree that upon removal to federal court the Temporary Restraining

Order entered in Jefferson Circuit Court would have expired on August 31. The parties stipulated that they would abide by the order until September 14, the date of this Court's hearing. In the process of deciding this motion to remand, the Court has allowed the order to expire pursuant to Fed.R.Civ.P. 65(b). The two individual Plaintiffs have replaced their Firestone tires and have requested the type of reimbursement which Firestone has initiated in connection with its NHTSA recall. Moreover, Firestone has not evidenced, as yet, an intention to ignore lawful requests for reimbursement under Kentucky law. A class action has yet to be certified. The Court did not see strong legal or practical reasons for continuing the injunctive relief. Now that the Court has remanded, the state court can assess the need for such relief in light of all appropriate factors, including the pre-emption defense.

can be assigned to the Panel on Multi-District Litigation (the "MDL Panel"). To be sure, the MDL Panel could resolve some common legal problems including those concerning jurisdiction, establish uniform discovery schedules, and assure that the civil cases proceed fairly without hindering NHTSA's recall activities. However, this facially sensible view runs counter to the important principle that a court must have the power to decide an issue before passing judgement on the reasonableness of any particular solution. *See* 28 U.S.C. § 1447(c) (2000) (mandating remand by a district court if it appears that the court lacks subject matter jurisdiction).[6] While other courts may have focused on the fairness and efficiency of the MDL solution, this Court believes that the issue of subject matter jurisdiction is even more fundamental than considerations of efficiency or fairness from Firestone's perspective.[7] As a court of limited jurisdiction, this Court does not have the power to decide issues beyond the authority granted by Congress.[8] However reasonable Firestone's suggestion, it does not

confer on this Court jurisdiction that otherwise does not exist.

The Court will enter an order consistent with this Memorandum Opinion.

## ORDER

The Court having considered Plaintiffs' motion to remand and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiffs' motion to remand is SUSTAINED and this case is remanded to the Jefferson Circuit Court.

6. Considerable debate concerns whether courts might properly consider the merits of cases or the fairness of various procedures by the practice of hypothetical jurisdiction. *See* 52 Vand.L.Rev. 235 (1999). In arguing that concerns at fairness and efficiency justify staying a decision on jurisdiction pending resolution by the MDL Panel, Firestone seems to be suggesting such an approach, at least in the alternative. The Court need not enter that debate in all its many aspects since, in this case, the issue of jurisdiction seems so clear that the Court cannot and should not avoid it in favor of other non-jurisdictional considerations.

7. Other courts considering similar issues have stayed a decision on subject matter jurisdiction pending resolution of the issue by an MDL panel. *See Siewert–Sitzmore v. Bridgestone Firestone Inc.*, No. 00–1289 (C.D.Ill. Sep. 14, 2000) (exercising discretion to defer ruling on a motion for remand citing the hardship imposed on Firestone by multiple lawsuits and considerations of judicial economy); *Falgoust v. Microsoft Corp.*, 2000 WL 462919, at *2 (E.D.La., 2000).

8. Not too long ago, Justice Scalia spoke for the majority in *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), that jurisdiction is a "first and fundamental question" that a court is "bound to ask and answer for itself." *Id.* at 94, 118 S.Ct. 1003. Although our case is dissimilar in several respects, one cannot overlook the Supreme Court's strong endorsement of the importance of deciding jurisdictional issues. *See also Sheldon v. Sill*, 49 U.S. (8 How.) 441, 12 L.Ed. 1147 (1850) ("Courts created by statute can have no jurisdiction but such as the statute confers"). Therefore, the jurisdictional issue must be resolved before deciding whether to stay or transfer the case to the MDL panel. *Cf. Aetna U.S. Healthcare, Inc. v. Aktiengesellschaft, Inc.* 48 F.Supp.2d 37, 39 (D.D.C., 1999) (deciding whether removal was proper before deciding whether to stay pending ruling by Judicial Panel on Multidistrict Litigation); *Good v. Prudential Ins.* 5 F.Supp.2d 804, 809 (N.D.Cal., 1998) (Discussing motion to remand before motion to stay and finding stay proper after finding remand improper).