Roger LITTEL, Louann Pleasant, on behalf of themselves and those similarly situated, Plaintiff,

v.

BRIDGESTONE/FIRESTONE, INC., Bridgestone Corp., Does 1 through 100, Defendants.

No. CV–02–08836 CAS.

United States District Court, C.D. California, Western Division.

Jan. 8, 2003.

Gail M. Lisoni, Joseph L. Lisoni, Lisoni & Lisoni, Pasadena, CA, for Plaintiffs.

Richard T. Williams, Marrian Seyean Chang, Holland & Knight, Stephen T. Owens, Michael T. Purleski, Adam Randall Fox, Squire Sanders & Dempsey, Los Angeles, CA, Thomas S. Kilbane, Joseph C. Weinstein, Roger M. Gold, Squire Sanders & Dempsey, Cleveland, OH, for Defendants.

## ORDER REMANDING ACTION TO SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF RIVERSIDE

SNYDER, District Judge.

## I. FACTUAL AND PROCEDURAL HISTORY

The instant action arises out of the alleged manufacture and sale of defectively designed automobile tires. On August 12, 2002, plaintiffs Roger Littel and Louann Pleasant, both California residents, commenced this action in Riverside County Superior Court against defendants Bridgestone/Firestone, Inc., Bridgestone Corporation, Inc., and Does 1 through 100 (collectively "defendants"). Plaintiffs allege that the Steeltex R4S, R4SII and A/T brands of automobile tires ("Steelex tires") sold by defendants suffer from a variety of defects that may lead to failure of the tires during operation. *See* Complaint ("Compl.") (attached as Exhibit A to Bridgestone/Firestone, Inc.'s Notice of Removal) ¶ 7. Plaintiffs have filed a putative class action on behalf of all persons residing in the United States who own tires manufactured by Bridgestone/Firestone, Inc., from 1990 through the present. *Id.* ¶¶ 17–21.

Plaintiffs allege the following claims for relief arising out of the design, manufacture, and sale of the Steelex tires: (1) fraudulent concealment; (2) deceptive practices in violation of California Consumer Legal Remedies Act ("CLRA");[1] (3) unfair business practices in violation of the California Unfair Practices Act ("CUPA");[2] (4) strict liability; and (5) negligence. *Id.* ¶¶ 31–56. Specifically, plaintiffs allege that

At all times herein mentioned Bridgestone/Firestone was required by law to report safety-related defects to the National Highway Traffic Safety Administration ("NHTSA") and to respond truthfully and accurately to all inquiries from that agency during the course of any investigation(s). On September 29, 2000 NHTSA opened an investigation ("Preliminary Evaluation—PE00–040") into the Steeltex R4S, R4II and A/T tire brands. Said investigation was prompted by the hundreds of consumer complaints of tire tread separations, some of which resulted in accidents, injuries and death. In response to NHTSA's inquires in connection with those investigations,

---

1. Cal. Civ.Code § 1750, *et seq.*

2. Cal. Bus. & Prof.Code § 17200, *et seq.*

Bridgestone/Firestone concealed the truth about the Steelex R4S, R4II and A/T tire brand defects and falsely represented to NHTSA that it knew of no common cause of the failure problem. Beginning with the first reports of failures and their own internal investigative efforts, Bridgestone/Firestone began a campaign of falsely labeling defect related failures as having been caused by impact damage, road hazards, under-inflation and a myriad of other causes not relating to their own defective design. On April 15, 2002, as a result of Bridgestone/Firestone's false and fraudulent representations, and NHTSA's reliance thereon, NHTSA closed their investigation. Plaintiffs are informed and believe that by concealing Steelex R4S, R4II and A/T tire brand defects Bridgestone/Firestone intended to, and did, avoid a government-mandated recall of all Steelex R4S, R4SII and A/T tire brands. The failure rates of the Steelex R4S, R4SII and A/T tire brands are as great as those experiences by the Wilderness A/T, and ATX brand of tires that were recalled by Firestone and Ford Motor Company.

*Id.* ¶ 10. Further, plaintiffs allege that

As a direct result of Bridgestone/Firestone's systematic concealment of the Steelex R4S, R4SII and A/T tire brand defects from the public, Plaintiffs and the Plaintiffs' class members had no opportunity to consider or weigh the risks posed by the Steelex R4S, R4SII and A/T tire brand defects when they purchased these tires or vehicles equipped with these tires, which pose a grave and ever-increasing danger risk to their personal safety and that of their families,

and to anyone who may be in the vicinity of the defective tire(s).

*Id.* ¶ 14.

Plaintiffs seek the following monetary and injunctive relief: (1) an order certifying that the action may be maintained as a class action; (2) an award of compensatory damages; (3) an order imposing "an asset freeze and a constructive trust over all moneys unlawfully obtained through Bridgestone/Firestone, [Inc.'s] unfair, unlawful, fraudulent and deceptive acts and practices, which, if allowed to be retained, would unjustly enrich Bridgestone/Firestone, [Inc.] and/ or would be dissipated beyond the jurisdiction of this Court"; (4) an award of actual damages pursuant to the CLRA; (5) an order requiring Bridgestone/Firestone, Inc., to notify the consuming public of the scope of the defects with the Steelex tires; (6) an order requiring Bridgestone/Firestone, Inc., to recall and replace the Steelex tires; (7) an award of attorneys' fees; (8) an award of punitive damages; (9) an award of costs; and (10) an award of pre- and post-judgment interest.

On September 11, 2002, defendants timely removed this action to the United States District Court for the Central District of California, Eastern Division, where the case was assigned to the Honorable Virginia A. Phillips. On November 19, 2002, the action was transferred as a related case to this Court. Defendants contend that there exists federal removal jurisdiction over the instant action because plaintiffs' claims for fraudulent concealment, and violations of CLRA and CUPA are artfully pled as state law claims, but that they should be recharacterized as federal claims. *See* Notice of Removal ¶¶ 6–19; Opposition of Defendant Bridgestone/Firestone, Inc. to Motion to Remand ("Opp.") at 8–12.[3] Defendants argue that "behind

3. Defendant Bridgestone Corp. joined the opposition to the motion to remand. *See* Joinder of Defendant Bridgestone Corp. in Opposition of Defendant Bridgestone/Firestone, Inc. to Motion to Remand at 2.

the Complaint lie individuals dissatisfied with NHTSA's handling and subsequent closure of its investigation into the Steelex tires and attempt to circumvent NHTSA's authority and assessments by disguising their claims as state law causes of action." *Id.* at 8. Defendants claim that the Court thus has supplemental jurisdiction over plaintiffs' claims for strict liability and negligence. *See* Notice of Removal ¶¶ 6–19.

The three motions presently before the Court are: (1) plaintiffs' motion to remand the action to state court; (2) defendant Bridgestone/Firestone, Inc.'s motion to dismiss the complaint for failure to state a claim; and (3) defendant Bridgestone Corp.'s motion to dismiss the complaint for insufficiency of process, lack of personal jurisdiction and failure to state a claim.

## II. MOTION TO REMAND

Pursuant to 28 U.S.C. § 1441, any civil action over which a federal district court has original jurisdiction, which action was originally brought in a state court, may be removed by the defendant or defendants to the appropriate district court. *See* 28 U.S.C. § 1441(a) and (b). The removal statute is strictly construed. *See Gaus v. Miles,* 980 F.2d 564, 566 (9th Cir.1992). A defendant seeking to remove an action to federal court bears the burden of establishing that the federal court properly may exercise subject matter jurisdiction over the action. *See id.* ("The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper.").

In their motion to remand, plaintiffs contend that there exists no ground upon which this Court may exercise subject matter jurisdiction over this action because their complaint alleges only state statutory and common law tort and fraud causes of action and because while the parties may be diverse in citizenship, "each plaintiff['s]

and class members' claims do not meet the minimum federal jurisdictional amounts in controversy." Motion to Remand ("Mot.") at 3, 4. Further, plaintiffs argue that defendants failed to establish in their Notice of Removal the existence of any basis for this Court to exercise subject matter jurisdiction. *Id.* Thus, plaintiffs seek an order remanding the action to the Riverside County Superior Court. *Id.* at 5.

### A. Diversity Jurisdiction

Federal district courts have original jurisdiction where a civil action is between citizens of different states, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. Accordingly, a claim filed in state court may be removed to federal court if it meets these two requirements. *See* 28 U.S.C. § 1441(a).

In their complaint, plaintiffs allege that they are citizens of California, that defendant Bridgestone Corp. is a citizen of Japan, and that defendant Bridgestone/Firestone, Inc. is a corporate citizen of Ohio and Tennessee. *See* Compl. ¶¶ 1–3. In their Notice of Removal, defendants do not contradict this allegation. Thus, it appears that the parties to this case are diverse.

As to the amount in controversy, plaintiffs' complaint does not set forth the actual amount of damages sought. *See, e.g.,* Compl. ¶¶ 50, 56 (seeking damages "according to proof"). Where a defendant seeks to remove a case from state court and the amount of damages sought by the plaintiff is unclear, "the defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount." *Gaus,* 980 F.2d at 566–67. If the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See Sanchez*

*v. Monumental Life Ins. Co.,* 95 F.3d 856, 862 (9th Cir.1996). The defendant ·must set forth evidence establishing that it is more likely than not that the amount in controversy exceeds the required amount. *Id.*

■ In this case, in their Notice of Removal, defendants set forth no allegations with respect to amount in controversy. Rather, defendants assert only that the action properly may be removed on the basis of federal question jurisdiction. *See* Notice of Removal ¶ 6. Thus, defendants have failed to establish the existence of this Court's original jurisdiction pursuant to 28 U.S.C. § 1332 and removal on this basis is not proper.

### B. *Federal Question Jurisdiction*

A federal district court has subject matter jurisdiction over civil actions "arising under" federal law. 28 U.S.C. § 1331. Accordingly, a claim filed in state court may be removed to federal court if the claim "arises under" federal law. *See* 28 U.S.C. § 1441(b).

■ Whether federal question jurisdiction exists is governed by the well-pleaded complaint rule. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Under this rule, the federal question "must be disclosed upon the face of the complaint, unaided by the answer." *Gully v. First National Bank in Meridian,* 299 U.S. 109, 113, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Phillips Petroleum Co. v. Texaco, Inc.,* 415 U.S. 125, 127–28, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974). Thus, "[a]s the master of the complaint, a plaintiff may defeat removal by choosing not to plead independent federal claims." *ARCO Env't'l Remediation v. Dep't of Health and Envt'l Quality,* 213

F.3d 1108, 1114 (9th Cir.2000). In this case, there is no dispute that plaintiffs' complaint pleads on its face only state law causes of action.

■ However, under the artful pleading doctrine, "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Sullivan v. First Affiliated Sec., Inc.,* 813 F.2d 1368, 1372 (9th Cir.1987) ("The artful pleading doctrine is a narrow exception to the straightforward rules of removal jurisdiction, which [courts] will apply only if the particular conduct complained of is governed exclusively by federal law.") (internal quotations and citations omitted). Although a federal court ordinarily is limited to examining the face of the complaint in determining removability, where a defendant asserts "artful pleading," the court may examine a the removal notice and supporting affidavits to determine whether the plaintiff's claim presented arises under federal law. *See Schroeder v. Trans World Airlines, Inc.,* 702 F.2d 189, 191 (9th Cir.1983).

■ Under the artful pleading doctrine, "[a] state-created cause of action can be deemed to arise under federal law (1) where federal law completely preempts state law; (2) where the claim is necessarily federal in character; or (3) where the right to relief depends on the resolution of a substantial, disputed federal question." *ARCO Env't'l Remediation,* 213 F.3d at 1114; *see also Rains v. Criterion Systems, Inc.,* 80 F.3d 339, 343 (9th Cir.1996) (citing *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 807–10, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986); *Franchise Tax Bd.,* 463 U.S. at 7–12, 27–28, 103 S.Ct. 2841).[4] The Ninth Circuit recognizes,

---

**4.** The formulation in *Rains* is cast in more general terms, but expresses essentially the same requirements. "Under the artful plead-

ing doctrine, a plaintiff may not avoid federal jurisdiction [either] by 'omitting from the complaint federal law essential to his claim,

however, that other than in complete preemption cases, the doctrine of artful pleading is rarely invoked because it "raises difficult issues of state and federal relationships and often yields unsatisfactory results." *Sullivan*, 813 F.2d at 1372.

### 1. Application of the Artful Pleading Doctrine

#### a. Complete Preemption

■ The complete preemption doctrine "is a narrow exception to the well-pleaded complaint rule." *Hofler v. Aetna U.S. Healthcare of California*, 296 F.3d at 764, 768 (9th Cir.2002). "On occasion, the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). Thus, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.*

■ The Ninth Circuit has held that "[t]he test [for complete preemption] is whether Congress clearly manifested an intent to convert state law claims into federal-question claims." *Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 669 (9th Cir. 1993). "Most federal statutes do not fall in this category." *Hofler*, 296 F.3d at 768 (citing William W. Schwarzer, et al., California Practice Guide, Federal Civil Procedure Before Trial § 2:726.2 (2000)).[5] In addition, most federal preemption is not "complete," *i.e.*, "[e]ven where federal statutes do supersede state law, in most cases they do not completely preempt state law so as to allow removal." Schwarzer § 2:726.5; *see also Hofler*, 296 F.3d at 768. Rather, such "ordinary" or "conflict preemption" is a defense to enforcement of state law, which defense may be raised in a defendant's answer, but it is not a basis for federal question jurisdiction. *See ARCO Envt'l Remediation*, 213 F.3d at 1114 ("Unlike complete preemption, preemption that stems from a conflict between federal and state law is a defense to a state law cause of action and, therefore, does not confer federal jurisdiction over the case.").[6] In such a case, the well-pleaded complaint rule precludes removal, and the case must

---

or by casting in state law terms a claim that can be made only under federal law.'" *Rains*, 80 F.3d at 344 (quoting *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1472 (9th Cir.1984)).

**5.** Complete preemption "is limited *primarily* to certain state law claims that are displaced by" the following statutes: (1) Employee Retirement and Income Security Act, (2) Labor Management Relations Act, and (3) Railway Labor Act. Schwarzer § 2:726.1.

**6.** This is so regardless of whether the federal defense is anticipated by the plaintiff in a complaint or advanced by a removing defendant in a notice of removal. *Franchise Tax Bd.*, 463 U.S. at 10, 103 S.Ct. 2841. The Supreme Court has held

The rule [that a federal defense does not establish federal question jurisdiction] ...

may produce awkward results, especially in cases in which neither the obligation created by state law nor the defendant's factual failure to comply are in dispute, and both parties admit that the only question for decision is raised by a federal preemption defense. Nevertheless, it has been correctly understood to apply in such situations. As we said in *Gully*, "By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby." 299 U.S. at 116, 57 S.Ct. at 99.

*Id.* at 12, 103 S.Ct. 2841. Thus there is no removal jurisdiction where the sole proffered basis thereof is defensive federal preemption. *Hunter*, 746 F.2d at 642.

be remanded to state court for lack of federal subject matter jurisdiction. *See Metropolitan Life Ins. Co.*, 481 U.S. at 65, 107 S.Ct. 1542; *Hunter*, 746 F.2d at 642.

In this case, defendants use the language of "preemption" but do not clearly articulate whether they base their argument on complete preemption or ordinary preemption. Since only complete preemption would confer federal jurisdiction over plaintiffs' claims, the Court examines whether defendants have shown that Congress intended to "convert all state law claims into federal-question claims" with regard to allegedly defective automobile tires. *Holman*, 994 F.2d at 669.

■ Defendants argue that plaintiffs' first claim, for fraudulent concealment, is completely preempted by the National Traffic and Motor Vehicle Safety Act ("MVSA"),[7] because "plaintiffs seek to establish additional reporting and disclosure requirements not found in the [MVSA]." Notice of Removal ¶ 8. Defendants argue that such an "effort to establish and enforce different standards is specifically prohibited by the [MVSA]." *Id.* To support their argument, defendants cite 49 U.S.C. § 30103(b)(1), which provides in relevant part that

> When a motor vehicle safety standard is in effect under this chapter, a State or political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this chapter.

49 U.S.C. § 30103(b)(1).

Next, defendants argue that plaintiffs' claims pursuant to CLRA and CUPA, under which they seek a state ordered recall and other injunctive relief, are preempted because "Congress intended to grant federal courts exclusive and complete federal jurisdiction over challenges to NHTSA-supervised recalls." Opp. at 11. Further, defendants argue that "notwithstanding the fact that no state courts have ordered nationwide recalls, if a state court were to do so, it must necessarily apply and comply with the Safety Act/ TREAD Act's recall provisions, or directly conflict with the federal standards prescribed by Congress." *Id.* at 11–12.[8] At oral argument, counsel for defendants argued that the savings clause in MVSA[9] saves only state common law actions, and does not save actions based on state statutory law. Thus, counsel argues that plaintiffs' state law claims pursuant to CLRA and CUPA are preempted by federal law, which preemption creates federal subject matter jurisdiction over this action.

After examining the relevant provisions of the MVSA, the Court concludes that defendants have failed to demonstrate Congress's intent to completely preempt state law claims such as those asserted by

---

7. 49 U.S.C. § 30101 *et seq.* The MVSA was amended in 2000 by the Transportation Recall Enhancement, Accountability, and Documentation ("TREAD") Act. *See* Pub.L. 106–414, § 1 Nov. 1, 2000, 114 Stat. 1800.

8. The arguments posited by defendants illustrate the need to distinguish between arguments based on the doctrine of "complete preemption," and the defense of "conflict" or "ordinary" preemption. To the extent defendants argue preemption as a defense to enforcement of plaintiffs' particular state law claims for fraudulent concealment, and viola-

tion of CLRA and CUPA, the Court rejects any such "attempt to circumvent the requirements of the well-pleaded complaint rule through the assertion of a federal preemption defense" and concludes that such a defense cannot form the basis of federal subject matter jurisdiction over this action. *Hofler*, 296 F.3d at 769; *see also Phillips Petroleum*, 415 U.S. at 127–28, 94 S.Ct. 1002; *Franchise Tax Bd.*, 463 U.S. at 10 n. 1, 103 S.Ct. 2841; *Hunter*, 746 F.2d at 642.

9. *See* 49 U.S.C. § 30103(e). This savings is discussed further *infra*.

plaintiffs. Despite defendants' contention, section 30103(b)(1) does not demonstrate the requisite congressional intent to completely preempt all state law claims in the area of vehicle safety or specifically, for injunctive relief such a tire recall. *See, e.g., In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 153 F.Supp.2d 935, 943 (S.D.Ind.2001) (holding express preemption clause of section 30103(b)(1) inapplicable to case in which plaintiffs sought recall of tires because the Department of Transportation has promulgated "no [Federal Motor Vehicle Safety Standard] that prescribes performance requirements or sets a rollover standard for vehicles."). Rather, at best, the language in section 30103(b)(1) indicates that defendants may be able to avail themselves of a federal preemption defense to the enforce-

ment of certain of plaintiffs' claims, if they are shown to conflict with federal law. This is, however, ordinary preemption, not complete preemption. *See id.* at 943–44 (granting defendants' motion to dismiss plaintiffs' claim seeking a tire recall on the basis of federal conflict preemption of such a claim).[10]

Further, section 30103(e) of the MVSA, the "savings clause," provides that "[c]ompliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law." 49 U.S.C. § 30103(e). Thus, the plain language of the statute suggests that Congress intended to preserve state law actions regarding automobile standards. *Accord Burgo v. Volkswagen of America*, 183 F.Supp.2d 683, 689 (D.N.J. 2001).[11] In addition, section 30103(d) pro-

---

**10.** At oral argument, counsel for defendants cited *In re Bridgestone/Firestone, Inc.*, to support the argument that only state common law claims are saved under section 10303(e), and not claims based on state statutory law. However, *In re Bridgestone/Firestone, Inc.* does not support such an argument. As noted above, the court in *In re Bridgestone/Firestone, Inc.* dismissed a claim seeking a recall of tires on the ground that such a claim was impliedly preempted under the doctrine of conflict preemption. *In re Bridgestone/ Firestone, Inc.*, 153 F.Supp.2d at 944. Nowhere did the court distinguish between claims based on state common law and statutory law with respect to the savings clause in section 10303(e). To the contrary, in concluding that the express preemption clause of section 10303(b)(1) did not expressly preempt plaintiffs' claim seeking a tire recall, the court categorized all state law-based claims together. The Court noted:

Defendants point to no provision of the [MVSA] explicitly superceding *state-law-based injunctive relief.* In addition, while the [MVSA] contains an express preemption provision, it is inapplicable to our case. *In re Bridgestone/ Firestone, Inc.*, 153 F.Supp.2d at 943. The Court concludes that the distinction as to whether plaintiffs' claim for injunctive relief in this case was brought

under state common law or statutory law is immaterial because, in neither case, is such a claim expressly or completely preempted by section 10303(b)(1). Plaintiffs' claims for injunctive relief under CLRA and CUPA therefore required no "saving" pursuant to section 10303(e).

**11.** Although the exact scope of MVSA preemption of specific state law claims is uncertain, the parties have cited to no case and the Court has found none, that holds that MVSA completely preempts state law claims with regard to safety regulations pertaining to automobile and automobile parts. To the contrary, the cases on point hold that such common law claims are protected from express preemption by the savings clause of section 30103(e). *See, e.g., Irving v. Mazda Motor Corp.*, 136 F.3d 764, 768 (11th Cir.1998);*Perry v. Mercedes Benz*, 957 F.2d 1257, 1264 (5th Cir.1992); *Farkas v. Bridgestone/ Firestone, Inc.*, 113 F.Supp.2d 1107, 1111–12 (W.D.Ky. 2000); *Campbell v. General Motors Corp.*, 19 F.Supp.2d 1260, 1273–74 (N.D.Ala.1998). Moreover, the Supreme Court has suggested that the MVSA was not "intended to centralize all authority over the regulated area in one decision maker: the Federal Government." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 286, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995) (distinguishing another case).

vides that a tire recall conducted pursuant to section 30120(b) does not displace "other rights and remedies under other laws of the United States or a State." 49 U.S.C. §§ 30103(d) (warranty obligations and additional legal rights and remedies); *see also* 49 U.S.C. § 30120(b) (tire remedies). Defendants argue that Congress never intended to allow state courts to order their own recalls. Opp. at 11. However, neither defendants' argument, nor the statutory language discussed above, demonstrates an intent by Congress to completely preempt all state-based remedies for defective tires. *See Farkas v. Bridgestone/Firestone, Inc.,* 113 F.Supp.2d 1107, 1111–12 (W.D.Ky.2000) (holding that under 49 U.S.C. § 30103(d) "it seems clear that Congress did not intend for the MVSA to completely preempt state law."); *see also Burgo,* 183 F.Supp.2d 683 ("Whether or not Congress intended to allow state ordered tire recalls, the Act contains no clear intention to preempt the entire area of automobile equipment standards and permit removal jurisdiction."). "Rather, the language of section 30103(d) demonstrates Congress's desire to preserve the role of the states in automobile safety efforts." *Burgo,* 183 F.Supp.2d at 689. Furthermore, the legislative history cited by defendants demonstrates that Congress intended only that the federal government possess *"primary* responsibility for regulating the national automotive manufacturing industry," and but not exclusive authority. Opp. at 11

(quoting S.Rep. No. 1301 (1966), *reprinted in* 1966 U.S.C.A.N.N. 2709, 2712 (emphasis added)). Thus, sections 30103(e) and (d) indicate that Congress did not intend to completely preempt plaintiffs' claims. The Court concludes that defendants have not established that plaintiffs' claims fall within the complete preemption exception to the well-pleaded complaint rule.

b. *Claim Is Necessarily Federal in Character*

■ A state law claim may be recharacterized as a federal claim if the claim alleges conduct "the propriety of which must be exclusively determined by federal law." *Sparta Surgical v. National Ass'n of Sec. Dealers,* 159 F.3d 1209, 1212 (9th Cir.1998).[12] However, as stated above, the power to recharacterize plaintiff's properly pleaded state law claim is rarely invoked because of difficult issues implicated by federalism and the often unsatisfactory results arising from such recharacterization. *Sullivan,* 813 F.2d at 1372.

Relying on *Buckman Co. v. Plaintiffs' Legal Committee,* 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001), defendants argue that plaintiffs' claim for fraudulent concealment is necessarily a federal claim. *See* Notice of Removal ¶ 13; Opp. at 9–10.[13] In *Buckman,* the Supreme Court held that plaintiff's "state-law fraud-on-the-FDA claims conflict with, and are therefore impliedly pre-empted by, federal law." *Buckman,* 531 U.S. at 348, 121 S.Ct.

12. Although the case law in the Ninth Circuit with respect to the test for whether a claim is "necessarily federal in character" appears to vary greatly, the test from *Sparta* seems to be appropriate in the instant case. Because defendants do not argue that the jurisdictional provisions of the MVSA "deprive the [California] courts of jurisdiction over this case, thereby making [defendants'] claims 'necessarily federal in character,'" as in *ARCO Envt'l Remediation,* 213 F.3d at 1115 (analyzing jurisdictional provisions of Comprehen-

sive Environmental Response, Compensation, and Liability Act), nor that the express language of the MVSA indicates that plaintiffs have filed a federal claim, as in *Brennan v. Southwest Airlines Co.,* 134 F.3d 1405, 1409–10 (9th Cir.1998) (analyzing provisions of Internal Revenue Code), the Court concludes that the analysis set forth in those cases is inapplicable here.

13. *See also* Bridgestone/Firestone, Inc.'s Motion to Dismiss at 8–9.

1012. The Court reasoned that "[p]olicing against federal agencies 'is hardly a field which the States have traditionally occupied' such as to warrant a presumption against finding federal pre-emption of a state-law cause of action." *Id.* at 347, 121 S.Ct. 1012 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)).[14] In reaching its conclusion, the Court examined at length the statutory and regulatory framework established under the Food, Drug and Cosmetic Act, as amended by the Medical Devices Act of 1976,[15] the statute at issue in the case. *See id.* at 343–50, 121 S.Ct. 1012. Of particular importance to the Supreme Court was that "[t]he FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the medical device provisions." *Id.* at 349 n. 4, 121 S.Ct. 1012 (quoting 21 U.S.C. § 337(a), which provides that "all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States.").[16] Thus, the Supreme Court concluded that "[s]tate-law fraud-on-the-FDA claims inevitably conflict with the FDA's responsibility to police fraud consistently with the Administration's judgment and objectives." *Id.* at 350, 121 S.Ct. 1012. The Supreme Court distinguished *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984), in which it had rejected implied preemption of a private damage remedy predicated on an alleged conflict of a state law fraud claim with a federal remedial scheme. *Id.* at 241, 104 S.Ct. 615. The Supreme Court noted that the decision in *Silkwood* turned on evidence that Congress had not intended to provide federal remedies for persons exposed to hazardous materials, whereas in *Buckman*, there existed "clear evidence that Congress intended that the MDA be enforced exclusively by the Federal Government." *Buckman*, 531 U.S. at 352, 121 S.Ct. 1012 (citing 21 U.S.C. § 337(a)).

■ Defendants argue that in this case, plaintiffs' claim for fraudulent concealment is essentially a claim for fraud-on-the-NHTSA. Notice of Removal ¶ 13; Opp. at 9.[17] As a result, defendants seek to recharacterize plaintiffs' fraudulent concealment claim as a federal claim under *Buckman*, thus conferring federal jurisdiction and supporting defendants' removal to this Court. *Id.*

There is a paucity of case law interpreting the Supreme Court's apparent extension of the doctrine of implied preemption. Moreover there is even less case law discussing *Buckman*'s potential effect on the characterization of state-law claims as federal claims for purposes of removal jurisdiction. In fact, the only case, published or unpublished, addressing an argument similar to the one advanced by defendants here is *Dawson v. Ciba–Geigy Corp.*, 145 F.Supp.2d 565, 572 (D.N.J.2001). *Dawson* involved a class action lawsuit on behalf of users of the prescription drug Ritalin. *Id.*

**14.** Further, the Supreme Court noted that "the relationship between a federal agency and the entity it regulates is inherently federal in character because the relationship originates from, is governed by, and terminates according to federal law." *Buckman*, 531 U.S. at 347, 121 S.Ct. 1012.

**15.** 21 U.S.C. § 301.

**16.** The Supreme Court also discussed the various statutory provisions with which the FDA is empowered to investigate fraud and to require disclosure of information in order to detect, deter and punish false statements made during the application process for approval of medical devices. *Id.* at 349, 121 S.Ct. 1012.

**17.** Plaintiffs have filed no reply to defendants' opposition to their motion to remand, and thus makes no argument in response to defendants' contentions with respect to *Buckman*.

at 567. The defendants in *Dawson* removed the action from state court, asserting the existence of federal jurisdiction based on a recharacterization of plaintiffs' state-law misrepresentation claim as a "fraud-on-the-FDA" claim, per *Buckman*. *Id.* at 572. The district court rejected the defendants' argument. *Id.* at 573. The court concluded that *"Buckman* does not create federal question jurisdiction in this case." *Id.* The Court reasoned that "[d]efendants interpret the [*Buckman*] Court's holding as finding both implied preemption and the elements of the jurisdictional doctrine of complete preemption" even though *"Buckman* did not address any jurisdictional issues of removal." *Id.* Finding the *Dawson* court's reasoning persuasive, especially in light of the particular and identical procedure postures of the two cases, the Court reaches the same conclusion as in *Dawson*. Although under *Buckman*, defendants may be able to assert an implied preemption defense to plaintiffs' state law claim for fraudulent concealment, such defense does not confer subject matter jurisdiction on this Court where it otherwise is lacking. *See ARCO Envt'l Remediation*, 213 F.3d at 1114. The Court concludes that defendants have failed to establish that any of plaintiffs' claims fall within the second exception to the well-pleaded complaint rule.

### c. *Substantial Federal Question*

 "Even where, as here, a state law creates the cause of action, and no federal law completely preempts it, federal jurisdiction still may lie if 'it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims.'" *Rains*, 80 F.3d at 345 (quoting *Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. 2841). However,

"[w]hen a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains*, 80 F.3d at 346 (citing *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 810, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)); *see also Duncan*, 76 F.3d at 1486 ("[I]f a single state-law based theory of relief can be offered for each ... cause[ ] of action in the complaint, then the exercise of removal jurisdiction was improper.").

Relying on *Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), defendants contend that a substantial federal question is at issue in this case because there exists a federally-created private right of action with respect to the claims asserted. Opp. at 12 (citing *Merrell Dow*, 478 U.S. at 822, 106 S.Ct. 3229).[18] Defendants argue that a private right of action exists under the MVSA where "any 'interested person' may petition NHTSA to investigate whether a safety risk exists and whether notification and recall are necessary," citing 49 U.S.C. §§ 30118(b)(2); 49 C.F.R. § 552.3, "Congress provided a federal remedy and enforcement mechanism directly to consumers, including plaintiffs, who feel that any component of a car, including its tires, may pose a safety risk." Opp. at 13.

 *California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981), sets forth the relevant framework for analyzing whether a federal claim for relief should be implied from a federal statute. *Id.* at 293, 101 S.Ct. 1775. The four factors relevant to the inquiry are as follows: (1) whether the plaintiffs are part

---

**18.** The portion of *Merrell Dow* upon which defendants rely is part of the dissent in that case.

of the class for whose special benefit the statute was passed, (2) whether the legislative history indicates a Congressional intent to confer a private right of action, (3) whether it is consistent with the underlying purpose of the statute to imply such a remedy for the plaintiffs, and (4) whether the cause of action is in an area traditionally relegated to the States, and in an area ordinarily under the control of state law, such that it would be inappropriate to infer a federal cause of action. *Id.*

 From a review of the complaint in the instant case, it does not appear that federal law provides plaintiffs with a private cause of action to replace the state law claims. The removing defendants argue, as noted above, that the NHTSA has sole authority under federal law to order a recall. Opp. at 11–12. Even if, as the removing defendants also contend, plaintiffs may petition the NHTSA for relief, such an administrative remedy is not the sort of "cause of action," required under relevant case authority. The MVSA establishes a right of action by the Attorney General of the United States, *see* 49 U.S.C. § 30163(a), and permits the Secretary of Transportation to order a manufacturer to recall defective vehicles or parts, *see* 49 U.S.C. §§ 30118, 30120, but does not appear to create a private right of action for injured members of the public. The Court therefore concludes that plaintiffs' well-pleaded complaint pleads state law causes of action separate and independent from the federal claims advanced by defendants. Therefore, the "substantial federal ques-

tion" exception does not apply. Under the well-pleaded complaint rule, federal question jurisdiction does not exist, and accordingly, this case is not removable.[19]

It is a matter of settled law that the plaintiff is the master of his or her own complaint and as such is free to ignore any federal claims for relief that may exist and instead choose to bring the claims solely on state causes of action. Plaintiffs have done so here, and defendants have not sufficiently established a basis for this Court to exercise removal jurisdiction over the action. The Court thus lacks subject matter jurisdiction to hear this case. Accordingly, this action should be remanded to the Superior Court of the State of California for the County of Riverside.[20]

## III. CONCLUSION

As set forth above, plaintiffs' motion to remand is hereby GRANTED, and both defendants' motions to dismiss the complaint are DENIED without prejudice as moot.

IT IS SO ORDERED.

---

19. Defendants also argue that where a class action lawsuit litigated in state court may affect persons outside of the state, federal due process concerns raise a substantial question of federal law. Thus defendants invoke federal jurisdiction on the basis of the Fifth Amendment to the United States Constitution. However, defendants cite no authority to support this argument, and this argument appears to lack merit because state courts have

concurrent jurisdiction to hear claims based on violations of the U.S. Constitution.

20. In light of the Court's conclusion that this case must be remanded to state court for lack of federal subject matter jurisdiction, the Court declines to examine the merits of either of defendants' motions to dismiss the complaint.